FIDELITY MUTUAL LIFE INSURANCE COMPANY *v.* BUSSELL.

Opinion delivered April 8, 1905.

1. INSURANCE POLICY—NONPAYMENT OF PREMIUM—WAIVER.—Where the first premium on a policy of insurance is paid by a note, which stipulates that, if it is not paid at maturity, the policy for which it is given shall be *ipso facto* null and void, without notice to the maker and without any act on the part of the insurer, no affirmative action on the part of the insurer is necessary to cancel the policy if the note be not paid when due and presented; and if the application on which the policy is based contains a provision that no agent shall have power to extend the time of payment of any premium, or to waive any forfeiture, such power to be exercised only by certain named officers at the head office and in writing, a local agent has no power to extend the time of payment of a premium note which is past due. (Page 28.)

2. SAME—FORFEITURE.—The rule that a forfeiture of a policy of insurance for nonpayment of a premium note cannot be waived by a local agent if the policy, or the application on which it is based, stipulates that he has no such power is not altered by the fact that the note was made payable to the local agent, and that such agent, by agreement with the insurer, was entitled to receive the amount of such note as part of his commissions. (Page 29.)

Appeal from Union Circuit Court.

CHAS. W. SMITH, Judge.

Reversed.

STATEMENT BY THE COURT.

On the 25th of June, 1900, the appellant insurance company issued a policy of $1,000 upon the life of John T. Bussell, payable to his father, Thomas P. Bussell, the appellee. The premium was $50.40, payable on the 25th of June, 1900, and every year thereafter for twenty years. No premium was paid on delivery of the policy other than 80 cents, the cost of the revenue stamps, and in lieu of cash premium John T. Bussell executed his note for said premium (less the revenue tax), $49.60, due November 1, 1900. Thereupon the insurance company issued him a receipt for the first premium, which contained this stipulation:

"It is understood and agreed that a protested check or a past-due note or obligation of any kind *is not payment,* and that any obligation given in exchange for this receipt, when dishonored or not paid at maturity, shall render this receipt and said policy absolutely void; and when payment hereof is made to an authorized agent, such agent must countersign at the date of paying, as evidence of payment to him."

When the note fell due, it was sent to R. A. Cloud, the local soliciting agent for the company, for collection. Bussell paid $25, and for the balance executed the following note:

$24.60.                          Junction, Ark., November 1, 1900.

"On or before December 20, without grace, after date I promise to pay to the order of R. A. Cloud twenty-four and 60-100 dollars at Junction, Ark., without defalcation, for value received. If this note is not paid at maturity, policy No. 107561, issued by the Fidelity Mutual Life Insurance Company of Philadelphia, for which it is given, shall be *ipso facto* null and void, without notice to the maker hereof and without any act on the part of the company, and shall remain so until restored as provided by its terms. It is expressly agreed and understood that in the event of failure to pay the note at maturity, the maker of this note shall be liable for its face value with interest from date at the rate of ...... per cent. per annum with all costs of collection, including attorney's fees of 10 per cent. as liquidated damages.

"J. T. BUSSELL.

"No....... Due.......                          (Stamp.)
"Indorsed:
    "R. A. CLOUD.
    "REAVES & BRIGHT."

This note was indorsed by Cloud, and sent to the general agents of the company at Little Rock, Reaves & Bright, and they in turn indorsed it, and sent it to the home office of the company, where it was accepted. Before it was due, the company sent it to Little Rock to its cashier, Bright, for collection, and he sent it to Cloud for collection. The evidence conflicts as to the course of events when Cloud presented it. Evidence for appellee tends to show that Cloud waived the prompt payment, and agreed

to wait a few days for payment, and in the time indicated Bussell was killed. Evidence of appellant tends to show that there was no waiver, nor act from which it could be inferred, and that a waiver was beyond the scope of Cloud's agency. Evidence was adduced by appellee tending to prove that the company was accustomed to accept payments after maturity without requiring a health certificate as stipulated in the policies, and evidence was adduced contradicting or explaining the instances proved. After the death of Bussell his partner paid Cloud the amount of the note and received this receipt:

"$24.60.                                    January 1, 1901.

"Received of E. A. Burnside twenty-four and 60-100 dollars to pay balance on J. T. Bussell policy.

"R. A. CLOUD."

The evidence conflicted as to the circumstances under which this payment was made. Cloud sent the money to the cashier, and he returned it by first mail, and Cloud turned it back to Burnside. The application contained a clause to this effect: "That the policy issued hereon shall not become binding on the company until the first payment due thereon shall have been actually received by the company or its authorized agent during my lifetime and good health;" and to the further effect that no statement, to whomsoever or however made, should modify the contract unless in writing and affirmed by the company, and, further, that no agent of the company should have power to modify the contract, or grant credit, or extend the time of payment of any premium, or to waive any forfeiture, etc.; such power to be exercised only by the president, vice president, actuary or assistant actuary at the head office and in writing.

The case was tried to a jury under instructions to this effect: That the forfeiture could be waived, and it was a question of fact whether it was waived.

The jury returned a verdict for the beneficiary for the amount of the policy, and, after aptly saving all questions, the insurance company appealed to this court.

*F. H. Calkins* and *Cantrell & Loughborough,* for appellant.

The failure of insured to pay his premium note at maturity forfeited his policy. 187 U. S. 335; 93 U. S. 24; 104 U. S. 88; 104 U. S. 252; 28 S. W. 411; 93 Tex. 733; 49 S. W. 425; 98 N. W. 69; 75 S. W. 735; 43 N. Y. 288; 49 Ark. 322; 62 Ark. 348; 54 Ark. 75; 52 Mich. 188; 116 N. Y. 389; 74 Minn. 387; 105 N. Y. 437; 93 N. W. 800; 62 Pac. 48; 56 Pac. 101; 67 S. W. 941; 63 N. Y. 160; 29 S. E. 927. Cloud had no authority to vary the conditions of the contract. 65 Ark. 248; 187 U. S. 353; 62 Ark. 353; 71 Ark. 242; 54 Ark. 75. Bussell had notice of the limitations upon the authority of Cloud, and expressly agreed to such limitations. 78 Fed. 566; 117 U. S. 519; 20 N. Y. 52; 85 N. Y. 278; 36 S. E. 637. Acceptance of payment of the note after maturity did not constitute a waiver. 28 S. W. 413; 74 S. W. 809; 96 N. W. 605; 39 Wis. 111; 96 N. C. 158; 53 Ind. 380; 2 Lans. 480.

*G. W. Hays* and *Gaughan & Sifford,* for appellee.

The forfeiture clause in the note to Cloud was void, and could not be enforced by appellant. 9 Cyc. 380; 71 Ark. 242; 53 Ark. 494; 62 Ark. 348, 562; 24 U. S. Law. Ed. 690.

HILL, C. J., (after stating the facts.) In the case of *Iowa Life Insurance Company* v. *Lewis,* 187 U. S. 335, the Supreme Court of the United States carefully reviewed the decisions of that court and other courts on the effect of premium notes and their nonpayment and extension of time by agents, and the conclusion reached is thus stated in the syllabus: "When the first premium on a policy of insurance is paid by note, and a receipt with such an indorsement thereon is given and accepted therefor, whilst the primary condition of forfeiture for non-payment of the annual premium is waived by the acceptance of the note, a secondary condition thereupon comes into operation, by which the policy will be void if the note be not paid at maturity, and no affirmative action cancelling the policy is necessary on part of the insurance company if the note be not paid when due and presented; and if the policy contains a provision that no person other than the president and secretary can waive any of the conditions, a local agent has no power to extend the time of payment of the note after the same has become past

due." The stipulation as to the president, and other officials, not the agents, being alone authorized to extend time of payment in that case was in the policy, and in this case is in the application. The application, note and policy, when forming one transaction, are read together as the entire contract. *Jacoway v. Ins. Co.* 49 Ark. 320. The Lewis case, *supra,* is much stronger on the facts for the beneficiary than this one, the alleged waiver being much clearer. This court recently decided a similar question in *Jefferson Mutual Ins. Co.* v. *Murry,* 74 Ark. 507, wherein it was held that a clause like the one in question, when not complied with, terminated the insurance, and it could only be reinstated by complying with the conditions therefor. The appellee invokes the rule that, notwithstanding provisions that waivers must be in writing, and cannot be made by agents, yet when made they work an estoppel. That rule, however, is confined to acts of the agent within the real or apparent scope of his authority, while common usage and the terms of this policy alike deny to collecting agents the authority to grant extensions for payment. *Iowa Life Ins. Co.* v. *Lewis,* 187 U. S. 337.

This case (the Lewis case) is in line with the decisions of this court sustaining a waiver of proof of death required by the policy, and in other respects but brings into application to the facts of the case at bar principles frequently ruled by this court on waivers of conditions in policies. The cases in this court have always confined the waiver to an act done within the scope of the authority, and to a matter which can be waived. *Ins. Co.* v. *Brodie,* 52 Ark. 11; *German Ins. Co.* v. *Gibson,* 53 Ark. 494; *German-American Ins. Co.* v. *Humphrey,* 62 Ark. 348; *American Employers' Liability Ins. Co.* v. *Fordyce,* 62 Ark. 562; *State Mutual Ins. Co.* v. *Latourette,* 71 Ark. 242.

It is shown that Cloud's commission on the first premium was $35.28, and it is argued that the payment of $25 more than discharged the debt to the company, and that, as the note was made to Cloud individually, and not to the company, it was his note, and not the company's. There is no showing, however, that the commission of Cloud was to be other than a percentage of the premium. Even if it was true that all of this sum would have gone to Cloud, it was by virtue of a contract with the

company, and not with Bussell, and as to Bussell it was all due the company. The evidence shows it was treated as the company's note. While made to Cloud, it was promptly indorsed by him to the cashier, and by the cashier also who sent it to the company, and its acceptance by the company alone prevented the policy forfeiting on November 1, when the first note was due. After Bussell's death, in the transaction between Cloud and his partner, Burnside, it was treated as representing money due the company, as evidenced by Cloud's receipt to Burnside.

The court erred on the evidence in this case in submitting the question of waiver of payment when due to the jury, and the judgment is reversed, and the cause remanded.