## Mutual Life Insurance Company *v.* Abbey.

### Opinion delivered July 22, 1905.

1. Life insurance—authority of soliciting agent.—A mere soliciting agent for a life insurance company, employed under a general agent, could not bind the company by accepting notes in lieu of cash for premiums due, nor by agreement that default in payment of premiums would not forfeit the policy. (Page 331.)

2. Same—authority of general agent to accept notes.—Where a general agent of a life insurance company is clothed with authority generally to transact the company's business in the State, and to collect premiums, and to accept notes to himself in lieu of cash, the company looking to him instead of the policy holder for the cash, he is authorized to bind the company by accepting notes in lieu of cash; and when he accepts a note and waives cash payments, the company is bound by his act, whether he pays the company or not. (Page 331.)

Appeal from Pulaski Circuit Court.

Edward W. Winfield, Judge.

Affirmed.

*Edward L. Short* and *Rose, Hemingway & Rose,* for appellant.

The continuance of the policy was conditioned upon the payment of premiums. The third was not paid, and the policy lapsed, and the agent of appellant had no authority to waive the forfeiture. 60 Ark. 532; 62 Ark. 348; 86 S. W. 815; 187 U. S. 336; 93 U. S. 30; 54 Ark. 75; 104 U. S. 91. Presumptively, a promissory note

is only conditional payment.  48 Ark. 267; 68 Ark. 233; May, Ins. § 345. The third note was not accepted as payment, and Mrs. George had no authority to do so.  187 U. S. 336; 112 U. S. 707; 28 S. W. 411; 100 Mass. 500; 123 Mass. 115; 42 N. W. 934; 49 Ark. 320. Failure to return the last two notes, which were not accepted, did not prevent a lapse.  35 S. W. 869; 77 N. W. 295; 187 U. S. 336; 42 N. W. 179.

*Murphy & Mehaffy* and *James P. Clarke,* for appellee.

Mr. Remmel had authority to waive cash payment of premiums and accept a note in lieu thereof.  62 Ark. 70; 155 N. Y. 257; 87 Fed. 646; 48 Ark. 195; 96 U. S. 84; Story, Ag. §§ 126, 127. The act of Mrs. George must have been ratified or repudiated *in toto.*  54 Ark. 216; 49 Ark. 324; 111 U. S. 395. The notes given were the notes of appellant.  36 Ark. 501; 115 N. C. 287. The taking of the note is *prima facie* payment.  8 Ark. 213, 494; 9 Ark. 339; 7 Ark. 524; 28 Ark. 66; 35 Ark. 75; 14 Ark. 264. And at least extends the time of payment to the maturity of the note.  131 U. S. 287; 187 U. S. 352; 104 U. S. 252. The declarations of Farr are not binding on the beneficiary.  29 S. E. 560; 32 L. R. A. 477; 96 U. S. 544.  Unless a forfeiture is specifically provided for in the contract, no forfeiture attaches upon failure to pay the note.  45 N. J. 543; 37 Kan. 674; 31 La. Ann. 235; 101 Mass. 558; 42 Mich. 19; 37 S. C. 417; Joyce, Ins. § 1202; 101 Cal. 637; 19 S. W. 10; 62 Ark. 562; 69 Ark. 145.

*Rose, Hemingway & Rose,* for appellant in reply.

The acceptance of one note did not bind appellant as to all. 11 Ark. 189; 58 Ark. 21; 64 Ark. 217.

HILL, C. J.  Mr. H. L. Remmel was a general agent of the appellant life insurance company, being district manager for the State of Arkansas. Mrs. George was a soliciting agent of Mr. Remmel's. The company accepted no notes for premiums, but Mr. Remmel authorized his solicitors to take notes for premiums, and directed them, when the party was not strong financially, to divide the annual premium into quarterly payments. When Mr. Remmel approved the notes taken by the solicitors, and the application was accepted by the company, and the policy written, he would pay the first note and deliver the policy. The company required all premiums to be paid in cash; and if Mr. Remmel took

a note he paid the company, and the note was his individual property. He transacted ninety per cent. of his business in notes and the company was aware of his method of business.

George M. Farr was a letter carrier in the city of Little Rock, and Mrs. George solicited him to take life insurance with the company she was working for. She succeeded in getting him to apply for a $2,000 policy, and his application was accepted, the policy written and delivered. He paid no cash, but he and his wife executed four promissory notes, in usual form of negotiable notes, to the order of Mrs. George, due three, six, nine and twelve months from date, respectively. The quarterly premiums were due in advance, and the effect of these notes was to carry the payments over a period of one year, instead of nine months. The agreement when the notes were executed and the subsequent conduct of Farr are subjects of sharp conflict in the evidence. Farr paid none of the notes, and died before the fourth note became due, and his widow, who has remarried, brought suit on the policy, and recovered in the circuit court, and the company has appealed.

The evidence adduced on the part of Mrs. Farr (now Mrs. Abbey) was in substance:

That there was an understanding with Mrs. George that there was to be no forfeiture of the policy till the fourth note fell due, and she was preparing to pay the notes at the end of the year. That when the first one came due they were to pay it, and if not that Mrs. George would stand good for it, and that if a stipulation had been put in the notes that the policy would forfeit when any note was not paid, she would not have signed them. That after Farr's death Mrs. George told her to pay Mr. Remmel the money, that the policy was as good as ever, and that she (Mrs. George) had an interest of $40 in the premium. The notes were never returned to her or to Farr.

The testimony on behalf of the company was in substance:

That Farr was told that the policy would forfeit on non-payment of any one of the notes; that at his request, and on his promises to repay the amounts, Mrs. George got Mr. Remmel to pay each of the two first notes, and that Farr afterwards declined to pay or continue the policy, and said he would take cheaper insurance. That Mrs. George indorsed the first and second

notes to Mr. Remmel, but did not indorse the last two.    That the last notes were never accepted by Remmel, but merely retained by him with the understanding that as each note was paid he would accept the next one.    After Farr's death Mr. Remmel gave the last two notes to a clerk to return to Mrs. Farr, and the clerk lost them.    The evidence is undisputed that Mrs. George was the agent of Mr. Remmel, and had no express authority to accept notes finally; only to take them subject to his approval and acceptance.    Mr. Remmel wrote Farr several letters demanding payment of each of the first notes, explaining that he had paid them to the company, thereby giving and continuing life to the policy; and he threatened suit upon them, and finally offered to grant further indulgence if he would get a surety.

Mrs. George had no right to waive cash payment and accept notes therefor.    She was a mere soliciting agent under the general agent, and she could not bind the company by accepting notes in lieu of cash for the first or any subsequent premium.    Nor could she bind the company by any agreement that default in payment of premiums would not forfeit the policy.    *American Ins. Co.* v. *Hampton,* 54 Ark. 78; *Burlington Ins. Co.* v. *Kennerly,* 60 Ark. 532; *German-American Ins. Co.* v. *Humphrey,* 62 Ark. 348; *Fidelity Mutual Ins. Co.* v. *Bussell,* 75 Ark. 25, 86 S. W. 815; *Iowa Life Ins. Co.* v. *Lewis,* 187 U. S. 336.

Mr. Remmel, the general agent, was clothed with authority to transact generally the company's business in this State, and to collect the premiums, and was permitted by the company to accept notes to himself in lieu of cash to the company, the company looking to him instead of the policy holder for the cash in such cases.    This general power gave him authority to bind the company by accepting notes in lieu of cash; and, whether he paid the company or not, when he accepted a note and waived cash payments, the company was bound by his act, for it was within the apparent scope of his agency.    See *Miller* v. *Life Ins. Co.* 12 Wall. (U. S.) 285, and long line of decisions following and approving it collected in 7 Rose's Notes on U. S. Reports, pp. 546-549.    In *American Employers' Liability Ins. Co.* v. *Fordyce,* 62 Ark. 562, this court approved the doctrine above stated, and said it was in accordance with "the consensus of modern authority."

In *Insurance Company* v. *McCain*, 96 U. S. 84, the Supreme Court of the U. S. said:

"The law is equally plain that special instructions limiting the authority of a general agent, whose power would otherwise be co-extensive with the business entrusted to him, must be communicated to the party with whom he deals, or the principal will be bound to the same extent as though such special instructions were not given. Were the law otherwise, the door would be open to the commission of gross frauds. Good faith requires that the principal shall be held by the acts of one whom he has publicly clothed with apparent authority to bind him. Story on Agency, §§ 126, 127, and cases there cited."

The court sent the case to the jury under instructions correctly embodying the principles above stated. The right to a recovery was limited to finding from the evidence that Mr. Remmel accepted the notes and instructing that there could be no recovery on any agreement or understanding with Mrs. George to this effect; that the jury must find that Mr. Remmel accepted the notes in lieu of cash payment, including the third note, before the beneficiary could recover. The jury was correctly instructed, and has found that Remmel accepted all of the notes. The question of difficulty before the court is whether there is legally sufficient evidence to sustain this finding. There is positive testimony from Mr. Remmel and Mrs. George that only the first two were accepted, but Mrs. George's testimony is contradicted, either directly or by necessary implication, on all material matters by Mrs. Abbey.

Against this positive testimony of Mr. Remmel and Mrs. George are these facts: Mr. Remmel took and retained all four notes, and promptly paid the company for the first two as they fell due. They were negotiable and not due, and did not belong to him unless he had accepted them; and yet he retained all of them long after Farr had defaulted on the first two, and after he had repeatedly threatened suit on them. The taking of four notes, instead of one, indicates that credit was to be extended for the first year, and not merely the first quarter, and the absence of a clause in the notes forfeiting the policy in case of default gives color to this theory. If Farr gave the notes with that understanding with Mrs. George, their retention by Remmel would indicate

an approval of that agreement of his agent.  Farr put out these four absolute obligations, good in the hands of an innocent purchaser, and there was no consideration for any of them except the first when they were taken, under Mr. Remmel's theory, and yet after three defaults they are still retained, and the fourth, not yet due, also retained.  These and other facts in evidence are sufficient to support the finding that the notes were accepted by Mr. Remmel when the policy was delivered.

The judgment is affirmed.