PACIFIC MUTUAL LIFE INSURANCE COMPANY *v.* CARTER.

Opinion delivered November 29, 1909.

1. TRIAL—EFFECT OF ASKING PEREMPTORY VERDICT.—Where defendant asked for a peremptory verdict, which request was denied, and subsequently requested other instructions, he will be held not to have waived the right to have any disputed questions of fact submitted to the jury. (Page 384.)

2. INSURANCE—AUTHORITY OF SOLICITOR.—Where the insured failed to pay the premium of an accident policy before the injury occurred, and a forfeiture resulted by the terms of the policy, a mere soliciting

agent had no authority to continue the policy in force by issuing to the insured a renewal receipt. (Page 385.)

3. SAME—APPARENT AUTHORITY OF AGENT.—Where an insurance company furnished to an agent stationery which designated him as its general agent, it will be liable to those who dealt with him on the faith of his being such general agent. (Page 385.)

4. SAME—FORFEITURE—WAIVER.—Where a general agent of an insurance company knew that a soliciting agent had issued a renewal receipt extending an accident insurance policy without requiring the premium to be paid as required by the policy, and made no objection thereto, and after the insured was injured encouraged him to make his proofs of loss, he will be held to have waived a forfeiture on account of the non-payment of such premium. (Page 386.)

5. SAME—STATUTE ALLOWING PENALTY AND ATTORNEY'S FEE.—The statute allowing a penalty and attorney's fee to be recovered against insurance companies who fail to pay their policies within the time specified in their policies (Acts 1905, p. 307) is valid, and applies to mutual accident insurance companies. (Page 387.)

6. SAME—WHEN PENALTY AND ATTORNEY'S FEE DISALLOWED.—Under Acts 1905, p. 307, providing that insurance companies shall be liable for a penalty and attorney's fee where they fail to pay the amount of a loss within the time specified in the policy "after demand made therefor," the insured is not entitled to recover a penalty and attorney's fee where he demanded in his complaint more than he recovered. (Page 387.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; reversed in part.

### STATEMENT BY THE COURT.

The appellee sued appellant on a policy of insurance issued by appellant to appellee, insuring the latter against bodily injuries effected directly through external, violent and accidental means. The policy provided for the payment of one-third of $5,000 if the assured should become permanently and totally blind in either eye. The complaint alleged that on the 5th day of September, 1907, while he was engaged in his occupation as brick contractor, and, while attempting to drive a nail, he struck said nail in such manner that it rebounded, hitting him in the left eye, inflicting an injury that made it necessary for said eye to be removed; that said policy was in full force and effect on said date; that on or about the 25th day of September, 1907, he furnished affirmative proof of said injury to the defendant com-

pany through its general agent in the State of Arkansas to the defendant company at Los Angeles, Cal., as required by the policy. The complaint alleged that the plaintiff had often requested said company to pay for said injury, but said defendant had refused to do so. Appellee prayed for judgment in the sum of $1,666.66.

The answer denied all the material allegations of the complaint, and set up that the manual labor in which appellee was engaged at the time of his injury was more hazardous than that of "brick contractor, superintending only," which was the occupation appellee warranted that he was pursuing when the policy was issued; that for the more "hazardous occupation" appellee was only entitled under the policy to the sum of $1,444.44 for an accident rendering him totally and permanently blind in either eye; that appellee had failed to file proof of loss within the time specified in the policy. And that at the time of his injury the premium for insurance was due and unpaid, and that the policy therefore was not in force at the time of appellee's injury.

Appellee was permitted during the progress of the trial, over appellant's objection, to amend his complaint and to ask for judgment for an attorney's fee and penalty.

Embodied in the policy was a schedule of warranties signed by the assured, in which, among other things, he warranted his occupation as that of "brick contractor, superintending only."

The policy contains the following provisions, to-wit:

"Provided: 1. This policy shall not take effect unless the premium is paid previous to any injury under which the claim is made. The term of the policy is as stated in the Schedule of Warranties herein, and may be renewed, subject to the same conditions, from time to time, by the payment of the same pre- than thirteen weeks."

"3. If the insured is injured in an occupation or exposure classified by this company in its latest manual as more hazardous than that stated in the Schedule of Warranties, the company's liability shall be limited to such proportion of the principal sum or other indemnity as the premium actually paid will purchase at the rate fixed by the company for such more hazardous occupation or exposure.

"5. No agent has power to waive any condition of this policy.

"6.  No claim hereunder shall be valid unless written notice
of any injury, fatal or non-fatal, or of any disease for which
claim can be made, is given to the company at Los Angeles,
California, or to a duly authorized general agent or manager of
the company, within twenty days from date of injury or com-
mencement of such disease; nor unless thereafter affirmative
proof is given to the company at Los Angeles, California, within
twenty days from date of actual total loss as herein defined, or
total blindness or paralysis as defined in Article XI (final proof
of such blindness and paralysis to be given twelve months there-
after), or within twenty days from the termination of each
thirteen weeks' period of continuous disability, and from the
termination of such disability, if the full period is more or less
than thirteen weeks."

The appellee introduced in evidence the policy sued on,
showing that he was insured with appellant from April 10, 1907,
to July 10, 1907.  He signed a schedule of warranties showing
that his occupation was that of "brick contractor, superintending
only," which warranty with the premium was the consideration
for the policy.

The consideration paid was $19.50.  The schedule of war-
ranties was made a part of the policy.  The policy was counter-
signed "by a duly authorized agent," C. D. Head.  The policy
expired July 10, 1907.

In the latter part of July, 1907, Mr. Hoselton, who was a
soliciting agent, gave appellee a receipt for the premium of re-
newal from July 10, to October 10, 1907.  The amount called
for in the receipt was not actually paid until September 5, 1907,
the day the accident occurred, and after the injury was received.
The appellee at the time he received the injury was setting a tile
mantel and driving a spike between the joints, which rebounded,
striking him in the eye and causing its loss.  After the injury to
his eye, and on the same day, Gus Less, the man for whom the
appellee was working and who owed appellee, paid the premium
for him.  The premium was paid to Hoselton.  After Hoselton
had turned the renewal receipt over to Carter, he told Head
about it, told him that he had turned the receipt over to Carter
on the understanding that Carter was to pay for it.  Hoselton
had confidence in Carter and handed him the receipt.  If Carter

had not paid for it, Hoselton would have been held responsible for it. Hoselton did not know, at the time he received the money from Less for Carter's premium, that the accident had happened.

It was about three days after the money was received by him when he learned that the accident had happened to Carter. It was shown that appellee had a conversation with Head concerning the receipt that Hoselton had given appellee, and that in such conversation Head said it was all right with him, that if it had not been paid he would have looked to Hoselton for it, and he would have had it to pay.

This conversation was after the accident. The testimony of C. D. Head on the question of his agency and what he did as to proof of loss is as follows: "I am engaged in life insurance work as a general agent, and handle some little accident insurance—not much. I began to write accident business about the first of 1907. My stationery is furnished me by the company. At that time 'Claude D. Head, General Agent,' appeared on all stationery. I got my contract from the company several years ago, and in the written contract there is no mention made of the accident business of 1907—only life insurance. I wanted to write some accident business, and I wrote the company to furnish me with the rate book and other supplies, which was done, and this was my authority for writing accident business. They furnished me a form of policy and limited me to towns of five thousand. The section of Arkansas in which I could do business was not mentioned. I have done business wherever I have gone. In 1907 I signed the accident policy as agent. I am not the general agent now. The first of the year we separated the life business, and Mr. Leigh of Little Rock took over the accident business. I received a notice of Sherman Carter's injury through the mail. It was received by me Sunday, and I mailed it the next day. I was out of town during the week, and it might possibly have come into the office a day or two before I got it. The letter handed me was written by me to the Pacific Mutual Life Insurance Company. I suggested to Mr. Carter making out his proof of loss for him. The proof is sworn to on the 7th of October, 1907. The words, '10th day of July, 1907,' were not inserted by me, and that is not my handwriting. I mailed the notice of accident on the

20th day of September, 1907, as shown by my letter, and the proof I mailed after it had been signed and sworn to. My interest in the accident business was merely that I had written the company and told it that I wanted to write some business, and they sent me rate book and supplies. I had no more authority than that. I was not the general agent for accident business in any way. As stated heretofore, I received the notice of injury by mail and forwarded it to the company. As to the proof of loss, I think Mr. Carter called at my office, and we talked it over and made the proof out for him. When I prepared the proof, I told him it would have to be sworn to before some officer. I think he brought the proof back that day, or possibly the next day, and I mailed it to the company. There was no other proof sent to the company that I know of. After the evidence was offered, the bill of exceptions recites the following: "The defendant asked the court to give the following instruction, to-wit: 'Your verdict will be for the defendant.' Thereupon the plaintiff moved the court to instruct the jury to find for the plaintiff for $1,444.44 with interest, penalties and attorney's fees. Thereupon the foregoing asked for by each party was discussed by counsel before the court, and upon consideration thereof the court refused to direct the jury to find for the defendant, to which refusal the defendant at the time excepted, and the court in lieu thereof gave the instruction asked for on the part of the plaintiff, to which ruling of the court the defendant at the time excepted, and asked the court to instruct the jury as follows, which request was made and refused before the court directed a verdict for the plaintiff." Then follow several prayers for instruction by the appellant, and after the recital showing that the court gave instruction No. 3 for the defendant, and refused the others separately and severally (to which ruling the defendant duly excepted), follows this recital: "The court then instructed the jury as follows: 'Gentlemen of the jury, the court has directed a verdict in this case for the plaintiff,' and thereupon the jury returned a verdict for the plaintiff in the sum of $1,444.44, with interest at 6 per cent. per annum from March 15, 1908."

The court rendered judgment for the amount of the verdict, and for a penalty of 12 per cent. and attorney's fees in the sum of $150, which the parties agree is a reasonable fee if one is to be allowed. Appellant duly prosecutes this appeal.

*Morris M. Cohn* and *Webber & Webber,* for appellant.

A waiver of condition requiring prepayment of premium must be pleaded in order to be available. 33 S. W. 549; 12 Ark. 769; 77 N. W. 529; 59 Pac. 901; 63 N. E. 755; 34 Pac. 16. The waiver must be confined to matter within the scope of authority. 75 Ark. 25; 76 Ark. 328; 54 Ark. 75; 62 Ark. 348; 66 Ark. 612; 4 L. R. A. (N. S.) 607; 187 U. S. 335; 92 N. W. 206. And the burden was on plaintiff to show a waiver. 67 Ark. 584; 72 Ark. 47. The effect of payment was to renew the policy from the time of payment only, and the court will give effect to this provision of the contract. 74 Ark. 507; 75 Ark. 25; 85 Ark. 337. The proof of loss was too late. 72 Ark. 484; 84 Ark. 224.

*William H. Arnold,* for appellee.

An agent authorized to adjust and settle claims against the company is authorized to waive a forfeiture for non-payment of premium, though the policy provided that this could be done only by writing signed by the president or secretary. 83 Ark. 575; 62 Ark. 570; 81 Ark. 160. There may be a parol waiver. 71 Ark. 242; 53 Ark. 494; 52 Ark. 11; 53 Ark. 215; 62 Ark. 352; 75 Ark. 98; 63 Ark. 187.

*Morris M. Cohn* and *Webber & Webber,* in reply.

A receipt for money is not conclusive against the party giving it. 5 Ark. 61. And a receipt "in full by cash" may be explained or contradicted. 5 Ark. 558; 56 Ark. 37; 39 Ark. 580. The question as to whether the company was estopped to deny that Head could bind it by a waiver should have been submitted to the jury. 79 Ark. 315; 71 Ark. 242; 81 Ark. 160. Where the plaintiff recovers less than his demand, he is not entitled to the 12 per cent. penalty given by the statute. 49 Ark. 492; 112 Ga. 765; 115 Ga. 113; 41 S. W. 680; 105 Fed. 31; 165 U. S. 150.

WOOD, J., (after stating the facts.)  1. The appellant did not waive the right to have any disputed questions of fact sub-

mitted to the jury. The bill of exceptions shows that appellant presented other prayers for instructions after its prayer for peremptory verdict. There is no waiver in such cases. See note to *Love* v. *Scatcherd,* 77 C. C. A. 1, where numerous authorities are collated.

2. The failure of appellee to pay the premium before the injury forfeited the policy. Hoselton, who was a mere soliciting agent, and no more, had no authority to continue the policy in force by issuing to appellee the renewal receipt. *American Insurance Co.* v. *Hampton,* 54 Ark. 75; *German-Am. Ins. Co.* v. *Humphrey,* 62 Ark. 348; *Mutual Life Ins. Co.* v. *Parrish,* 66 Ark. 612; *Fidelity Mut. Ins. Co.* v. *Bussell,* 75 Ark. 25; *Mutual Life Ins. Co.* v. *Abbey,* 76 Ark. 328; *American Ins. Co.* v. *Hornbarger,* 85 Ark. 337.

3. Upon the undisputed evidence there was really no question of fact to go to the jury, and the court did not err in instructing a verdict for the appellee. For the uncontroverted facts show that C. D. Head was the general agent of appellant. His first contract with the company several years before was to act as their general agent in writing life insurance. Then he concluded that he desired to write accident insurance, and wrote to the company for rate book and supplies in that line, and the company responded by sending the supplies of stationery. And on all the stationery Claude D. Head appeared as "General Agent." This he says constituted his authority, and this designates him as their general agent to write accident, as well as life insurance.

He was already the company's general agent to write life insurance under contract, and the appellant, by sending him the stationery for the accident business designating him as "general agent" for that line also, virtually extended his contract for life insurance to cover also accident insurance. The only limitation was that he should only write accident insurance in towns of 5,000, but that was not a limitation of his authority as general agent. He was the general agent of the company in the circumscribed territory. It will be observed that witness, Head, when asked who was the general agent in South Arkansas during the year 1907, replied that he was. Again he said: "I am not the *general agent now. The first of the year* we

separated the life business, and Mr. Leigh of Little Rock took over the accident business." Again, the record shows that, in answer to the question, "State whether or not you were acting as *general agent* of the accident department during this period of 1907," he replied: "I signed the policy as agent." Then followed the answers to the interrogations indicated *supra* that he was the general agent during the year 1907. True, on cross interrogatory he said that he had no authority as general agent for the accident business, "further than this." But he nowhere declares without qualification that he was not the general agent, and the effect of his testimony, taken as a whole, was that he was the general agent for accident as well as life. This is the only reasonable conclusion to be drawn from his evidence. But, if we are mistaken in saying that Head, under the undisputed evidence, was the general agent in fact, certainly there can be no question that the company clothed him with the apparent authority of a general agent. It held him out to the world as such. This being true, the company is liable to those who dealt with him on the faith of his being the general agent. 1 Cooley, Briefs on Ins. 345, and cases cited; *People's Fire Ins. Ass.* v. *Goyne,* 79 Ark. 315.

For the purposes of this case it is immaterial whether Head was the general agent in fact, or only had the apparent authority of a general agent. For in either case the evidence shows that the forfeiture of the policy for the nonpayment of the premium was waived by the conduct of appellant's general agent. He knew that the renewal receipt for the premium with his name as general agent thereon had been delivered to appellee, and made no objections thereto. He thus extended the credit to appellee beyond the time for payment, instead of requiring the payment to be made as the policy specified, and the company is bound by his act in so doing. Again, after the injury was received, he was advised that the payment of the premium was not made before the injury occurred, but thereafter, and he acquiesced, and encouraged appellee to make his proofs of loss.

As we construe the provision in regard to proofs of loss, appellee complied therewith substantially; but, even if he did not, the conduct of Head, the general agent, concerning this would be a waiver of forfeiture on that account. See, on waiver of

conditions by agent having authority so to do, *Commercial Fire Ins. Co.* v. *Belk,* 88 Ark. 506. Other cases on this subject are cited in appellee's brief.

The general agent of an insurance company may waive the performance of a condition inserted in a policy for the benefit of the company. *Van Allen* v. *Farmers' Joint Stock Ins. Co.,* 4 Hun 413 and cases cited; 22 Cyc. 1429.

4. This court has declared valid the statute allowing a penalty and attorney's fees as against fire insurance companies in *Arkansas Insurance Co.* v. *McManus,* 86 Ark. 115. The statute includes accident insurance companies, and there is no exception in favor of mutual accident insurance companies. See Acts 1905, p. 307.

But the act makes the company liable for failure to pay the loss "after demand made therefor." The statute thus contemplates that there shall be a demand. A recovery for penalty and attorney's fee cannot be had when complainant makes demand for more than he is entitled to recover. It could never have been the purpose of the Legislature to make the insurance companies pay a penalty and attorney's fee for contesting a claim that they did not owe. Such an act would be unconstitutional. The companies have the right to resist the payment of a demand that they do not owe. When the plaintiff demands an excessive amount, he is in the wrong. The penalty and attorney's fee is for the benefit of the one who is only seeking to recover after demand what is due him under the terms of his contract, and who is compelled to resort to the courts to obtain it. The appellee, by asking judgment for $1,444.44, concedes that he was demanding more in his complaint than he was entitled to receive. The judgment for the penalty and attorney's fee is therefore set aside, and the judgment of the circuit court will be affirmed for $1,444.44, with interest from date of judgment at 6 per cent.

BATTLE, J. (dissenting). One of the important questions in this case was, was Claude D. Head a general agent of the Pacific Mutual Life Insurance Company? He testified that he was not. That was sufficient to make it a question for the jury to determine. But it is said that his testimony was inconsistent with this statement. Be that as it may, the question still remained for the jury to decide, and the inconsistent statements were for the jury to

consider in determining the weight of his testimony. It is urged that he was designated as general agent on the company's stationery. To the reverse of this it was shown that he received and forwarded applications to the company for policies of insurance against accidents and for renewals of such policies, notices and proof of the accidents to the home office for action, and if policies and renewals were granted they were sent to Head to be countersigned and delivered to the applicant, upon the payment of the premiums. These facts were known to appellee, and were sufficient to put him on inquiry as to the extent of Head's agency. They tend to show that Head was only a soliciting agent, with authority to solicit insurance against accidents, secure and forward applications, to receive policies, collect premiums, to receive applications for renewals, to receive renewals returned by the company, and collect premiums, and to receive and forward notice and proof of accident, with no power to extend insurance by renewals. This evidence and these facts, it seems to me, presented questions of facts which should have been submitted to the jury for consideration; and that the trial court erred in instructing the jury to return a verdict in favor of the plaintiff.

Hart, J. I concur.