PATTERSON *v.* EQUITABLE LIFE ASSURANCE SOCIETY.

Opinion delivered March 23, 1914.

1. INSURANCE—LIFE INSURANCE—WAIVER.—Where the insured had defaulted in the payment of premiums and had died, and the insurance company wrote him after his death that a loan secured by the policy not being paid, it had entered the policy, as a purchased policy, and the cash value applied on the discharge of the loan, *held*, the letters did not establish a waiver of the forfeiture of the policy, nor show the policy to have been in full force up to the insured's death. (Page 177.)

2. INSURANCE—LIFE INSURANCE—WAIVER OF FORFEITURE.—A forfeiture of a policy for nonpayment of premiums *held* not waived by letters written by the insurer to the insured, in ignorance of his death. (Page 178.)

3. INSURANCE—LIFE INSURANCE—FORFEITURE OF POLICY.—Where an insurance policy provided for a forfeiture for nonpayment of premiums, the insurer need take no affirmative action to forfeit the policy. (Page 179.)

Appeal from Howard Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

STATEMENT BY THE COURT.

The appellant sued the appellee on a policy of life insurance in the sum of $2,000, issued by the appellee on the life of T. P. Patterson in favor of the appellant as

beneficiary, alleging the issuance of the policy, compliance on the part of the insured with its provisions, the death of the insured, demand upon appellee for the payment of the amount of the policy and its refusal to pay, and praying for judgment in the sum of $2,000, and for 12 per cent penalty and a reasonable attorney's fee.

The appellee admitted the issuance of the policy, and set up that the insured had failed to pay the annual premium of $92.08, which was due on the 1st of November, 1911; that upon the nonpayment of the premium, the policy became automatically a paid up policy, according to its terms, for $900; that on the 12th of December, 1910, the insured borrowed from the appellee $426, and as security therefor, assigned to appellee the policy; that the loan was still due and unpaid; that appellee had offered to pay the appellant the sum of $914, less $426, the amount of the loan on the policy. Appellee alleged that it was indebted to plaintiff in the sum of $488, which sum it tendered to the appellant, but she refused to accept the same.

The case was tried upon an agreed statement of facts. Among other things, it was agreed that on the 9th of November, 1911, Patterson wrote to the cashier of the appellee, stating that he desired to have fifteen days' extension for the payment of the premium, and wanted a loan on the policy. The cashier replied on the 11th of November, stating that it would be entirely satisfactory for the insured to remit the premium on or before December 1, with interest for the time overdue.

On the 25th of November, the cashier wrote the insured, notifying him that December 1, 1911, would be the last day on which the premium could be paid, and that unless the same was paid on or before that day, the policy would become forfeited, except as to the right of a surrender value or paid-up policy, and also advising the insured that the policy could not be restored after that date except upon evidence of good health satisfactory to the appellee, together with payment of all overdue premiums with interest.

On December 2, 1911, the insured, Patterson, returned the letter containing the notice to him, with the following indorsement: "I am in hard shape about my payment on my policy. Will the company give me fifteen days more on this? If they will, I would like to have it. I am in good health. If you can, I think I can pay in fifteen days."

In answer to this letter, on December 8, 1911, the cashier wrote Patterson, stating, in part, as follows: "While we were obliged to return the receipt to the home office under the society's rules, and the policy stands as forfeited, I am pleased to state that if you make remittance within time stated, during your continued good health, the restoration of the policy can be easily effected."

The policy contained this provision: "This policy shall lapse, and together with all premiums paid thereon shall forfeit to the society on the nonpayment of any premiums when due, except that provided premiums shall have been paid for the periods respectively mentioned in the following table, there will be granted, without action on the part of the assured, paid-up life insurance for the amount fixed in said table, or in lieu thereof, at the option of the assured, (1) the cash value fixed in said table upon the due surrender of this policy to the society at its home office in New York City at any time after its termination; or (2) (provided this policy is surrendered within the days of grace, or, with satisfactory evidence of good health, within one year thereafter) a paid-up term policy for the full amount assured under this policy for the time stated in said table. The paid-up assurance, cash value and paid-up term policy referred to herein are based on the number of full year's premiums that have been paid, are granted without participation in profits, and are subject to reduction for any indebtedness to the society under this contract."

The loan or cash surrender value was $426. The paid-up life insurance was $900. (Under the rules of the company then, $914.) The extended term insurance

was twelve years and eight months. The insured did not surrender the policy for a paid-up term policy nor request the issuance of such policy.

Patterson died on the 8th of January, 1912. The appellee had no knowledge or information of his death until on or about the 10th of October, 1912. Satisfactory proofs of death were furnished the appellee.

On July 10, 1912, appellee wrote the following letter addressed to him: "The loan of $426 secured by your policy became due on November 1, 1911, but has not been paid. You are notified, therefore, that unless the said loan shall be duly paid on or before July 23, 1912, the policy will be entered upon our records as a purchased policy and its cash value applied in payment of said loan and unpaid interest."

And on the 23d of July, 1912, appellee wrote Patterson to the effect that on account of the nonpayment of the loan, the policy, in accord with notice in former letter, had been entered on its records as a purchased policy, its cash value having been applied in payment of the appellee's claim.

The appellee, after receiving proofs of the death of Patterson, claimed that upon the nonpayment of the premium on December 1, 1911, the policy became automatically a paid-up policy for $900, according to the terms of the policy (or $914, according to the present rules of the appellee), and it was willing to pay that sum less the loan of $426, with interest.

The appellant presented prayers for instructions to the effect that if the appellee recognized the policy as in force until the death of the insured, notwithstanding the failure of the insured to pay the premium, that they should find for the appellant in the amount sued for less the amount of the loan, with interest, and the amount of the premium falling due November 1, 1911. The court refused to grant appellant's prayers for instructions, but directed the jury to return a verdict for the appellant in the sum of $484. This sum, for which the jury returned a verdict, represented the amount of the paid-up policy

less the loan of $426, which appellee had made to the insured, with interest thereon. A verdict was returned in accordance with the directions of the court, and judgment entered for the sum mentioned, and this appeal was taken.

*W. C. Rodgers,* for appellant.

1. The policy did not become void, but merely voidable at the election of the insurer, and the forfeiture was waived. Courts adopt the feature of the case most favorable to the losing party. 95 Ark. 560; 108 Ark. 283; *Ib.* 134-7; *Ib.* 8-11; 34 *Id.* 161-175.

2. It is the province of a jury to consider, not only the facts, but they have the right to make reasonable deductions and draw reasonable inferences from testimony which is undisputed or agreed to. 108 Ark. 8; 34 *Id.* 530-544; 35 *Id.* 99-113; 34 *Id.* 120, 126, 131; 33 *Id.* 565-572; 97 Ark. 438-442; 107 Ark. 158; 80 Ark. 49-54; 54 *Id.* 376-383.

3. A forfeiture will never be declared when it can reasonably be avoided. 127 Iowa 205; 81 N. Y. 410; 67 Ark. 553; 75 *Id.* 202; 82 *Id.* 150; 127 S. W. 966; 89 Ark. 111; 53 *Id.* 494-500. The provisions for forfeiture are for the benefit of the company, and may be waived. 72 N. J. L. 298; 96 U. S. 234; 200 Ill. 445; 29 N. Y. 184; 28 Watt. 88; 11 Kan. 533; 73 Ill. App. 544; 149 Cal. 57-66; 54 S. C. 599; 75 Me. 196; 26 Iowa 9; 71 *Id.* 710; 16 Fed. 454; 18 Neb. 495.

4. There was clearly a waiver in this case. 127 Iowa 205; 72 N. J. L. 298; 46 Pa. St. 323; 96 U. S. 234; 28 Gratt. 88, 108-9.

A waiver restores the policy. 18 Barb. 541; 56 Ill. App. 629; 127 Iowa 205-213; 143 Ala. 485.

*Alexander & Green* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1. All waivers must be based on knowledge. 67 Ark. 588; 87 *Id.* 326; 88 *Id.* 120; 104 *Id.* 288; 129 S. W. 41; 112 N. W. 734; 45 N. J. L. 177; 58 Barb. 185; 63 Hun. 624; 69 S. E. 961; 136 N. W. 347, 604; 119 Pac. 484; 46 So. 714; 96 Pac. 522; 114 N. W. 1051.

2. The provision in the policy is mandatory, and it was not necessary to declare a forfeiture. Cooley, Briefs on Law of Insurance, vol. 3, pp. 2277, 2278.

3. The only liability was $900 less the loan. Cases *supra*.

Wood, J., (after stating the facts). The court did not err in directing a verdict for the amount mentioned in the statement. The facts as set forth in the agreed statement are undisputed.

Under the provisions of the contract of insurance, upon the failure of Patterson to pay the premium within the time allowed, his contract of insurance was not wholly forfeited, but he had the following rights, towit: (a) To have the policy reinstated at any time upon evidence of good health satisfactory to appellee, and by paying any indebtedness due the company, with interest thereon at 5 per cent; (b) to surrender the policy for its cash value, $426, which was the amount of his loan; (c) to have a paid-up term policy for the full amount thereof (subject to be reduced by any indebtedness due the company), for a period of twelve years and eight months, upon satisfactory evidence of good health; or, (d) to have a paid-up policy without any action whatever on his part, in the sum of $900, subject to the loan. He did not avail himself of any of the rights that he had which required affirmative action on his part, and therefore at his death the only right remaining was that by which, without any action on his part, and by virtue of the automatic or self-executing provision of the policy, he was to receive paid-up insurance, which, under the table of values made a part of the policy, amounted to the sum of $900, out of which, under the terms of the policy, the loan from the company to him had to be paid.

Appellant contends that the letters written by the appellee on July 10 and July 23; 1912 (notifying the insured that unless the loan was paid, the policy would be entered upon its records as a purchased policy, and the cash value applied in payment of the loan, and that in default of payment of the loan after notice, that the pol-

icy had been entered on the records as a purchased policy), were sufficient to warrant the jury in finding that the payment of the premium had been waived, and that the policy was in full force at the time of the assured's death for the full amount thereof. But this contention can not be sustained for several reasons. Even if the insured had been alive, as appellee supposed he was at the time these letters were written, there is nothing in the letters that tends to show, or that would warrant a jury in finding, that the appellee at that time was recognizing the contract of insurance as in force for the full amount thereof. These letters were in regard to the payment of the loan from appellee to the insured, which was then past due. The letters had no reference whatever to the restoration and continuing of the policy of insurance for the full amount thereof, but they only had reference to the payment of the loan by applying thereto the cash value of the policy. This, under the terms of the insurance contract, the appellee had the right to do. The appellee had already notified the insured, as the letters in the agreed statement of facts show, that the policy and all payments thereon had become forfeited and void, except as to a surrender or paid-up value. The letters written after the assured's death had reference only to the paid-up or cash value of the policy, a value which it had, even after the right to recover the full amount thereof had been forfeited on account of the nonpayment of premiums. These letters did not disclose any intention on the part of the appellee to treat the policy of insurance as in force for the full amount thereof notwithstanding the failure upon the part of the insured to pay the premium.

Furthermore, the death of Patterson fixed the rights of the parties to the insurance contract as they existed at that time, and any letter written by the appellee after Patterson's death, and without knowledge thereof, and addressed to him as though he were living, could not be considered as a waiver of appellee's rights under the insurance contract as they existed at the time of Patter-

son's death. At the time of the death of the insured, by reason of the nonpayment of the premium, the policy had lapsed and he had been advised thereof, and only certain rights which involved affirmative action on his part remained to him, and of which he had not availed himself, and his death left only the right, by the very terms of the contract, to a paid-up policy of insurance for $900. The appellee, at the time of writing the letters, being ignorant of the death of Patterson, could not waive its rights fixed by his death, even if the letters would have otherwise constituted a waiver. There can be no such thing as a waiver of rights without knowledge of the facts upon which such rights are based. As was said by us in *Planters Mutual Ins. Co.* v. *Loyd,* 67 Ark. 588, "When the insurer, with knowledge of any act on the part of the assured which works a forfeiture, enters into negotiations with him which recognize the continued validity of the policy, * * * the forfeiture is waived. But, if, at the time of such negotiations, the insurer is ignorant of the forfeiture and of the misstatement which causes it, no waiver can be implied." *Capital Fire Ins. Co.* v. *Shearwood,* 87 Ark. 326.

After the death of the insured, waiver of the rights of appellee had passed, except such as might have been made based upon a knowledge of his death. There is no fact in the agreed statement of facts that would constitute a waiver of the right which appellee had under the provisions of the policy to declare that the policy and all payments thereon had lapsed and forfeited to the appellee except the right to a paid-up policy for a certain amount, which was fixed by the terms of the policy. Where a policy contains a mandatory provision for forfeiture and the insured has failed to comply with it, a forfeiture of the rights based upon such compliance results, and the courts must so declare. It is not within their province to make contracts for parties. The rule of law, based on such mandatory provision in a policy, is stated by Mr. Cooley in his Briefs on the Law of Insurance, vol. 3, p. 2277, as follows: "As a general rule, an

insurance company is not required to declare a forfeiture on an insured's failure to comply with a provision making a policy void on insured's failure to pay a premium or premium note when due in order that the forfeiture shall be available to the company.''

This court has invariably followed that rule, and it is the prevailing rule generally in this country. *Jefferson Mutual Ins. Co.* v. *Murry,* 74 Ark. 507; *Fidelity Mutual Ins. Co.* v. *Bussell,* 75 Ark. 25; *Aetna Life Ins. Co.* v. *Ricks,* 79 Ark. 38; *Wells* v. *Union Central Life Ins. Co.,* 81 Ark. 145-7; *American Ins. Co.* v. *Hornbarger,* 85 Ark. 337; *Citizens National Life Ins. Co.* v. *Morris,* 104 Ark. 288; *Lenon* v. *Mut. Life Ins. Co.,* 80 Ark. 563. See, also, the authorities from other jurisdictions cited in the brief of counsel for the appellee.

The rule is different, however, ''where the policy merely provides that on insured's failure to pay the premium within a specified time after it becomes payable, the company shall be at liberty to cancel it without further notice.'' In such cases ''the policy does not become void merely by nonpayment of the premium, but remains in force until affirmative action is taken by the company to cancel it.'' Cooley's Briefs on the Law of Insurance, vol. 3, p. 2278, and cases cited. See *Lenon* v. *Ins. Co., supra.*

The latter doctrine has no application to the facts of this record, for here the policy contained the mandatory provision, ''This policy shall lapse, and, together with all premiums paid thereon, shall forfeit to the society on the nonpayment of any premium due, except,'' etc.

Upon the nonpayment of the premium, under the above provision of the policy, the same *ipso facto* became forfeited except as therein provided.

The court did not err in directing a verdict. The judgment based thereon is affirmed.