HOME LIFE & ACCIDENT COMPANY *v.* HASKINS.

Opinion delivered November 27, 1922.

1. . INSURANCE—NOTICE OF FORFEITURE.—Where a policy of life insurance and a note given for premiums provided for forfeiture of the policy for nonpayment of the note, it was not necessary upon default in payment for the insurer to give the insured notice of forfeiture.

2. INSURANCE—CONTRACT.—Where a life insurance policy, or receipt for the premiums, and a note for the premiums were delivered simultaneously, they constituted a single contract and should be read together.

3. INSURANCE—FORFEITURE PROVISION IN PREMIUM NOTE.—The provision of a note for premiums given by the holder of a life insurance policy that the policy should forfeit upon failure to pay the note *held* valid.

4. INSURANCE—PAYMENT OF PREMIUM NOTE NOTWITHSTANDING FORFEITURE.—The provision of a note given for premiums under a life insurance policy that the note should be payable after forfeiture of the policy as consideration for the time the policy was in force, without reviving the policy, *held* valid.

5. INSURANCE—CANCELLATION OF POLICY FOR NONPAYMENT OF PREMIUM.—Where a life insurance policy provided for its forfeiture upon nonpayment of premiums when due, and a premium note provided for termination of the policy upon nonpayment at maturity, insurer, upon such nonpayment, had a right to cancel the policy on the books and thereby to end its liability, in the absence of reinstatement.

6. INSURANCE—PREMIUM NOTE NOT PAYMENT.—Where a soliciting agent of an insurance company accepted a note for permium on a policy delivered to the insured, and delivered the note to the company, the note was a conditional payment of the premium and belonged to the company, in the absence of proof that the agent assumed liability with the company's consent.

7. INSURANCE—EVIDENCE—SOLICITING AGENT'S STATEMENT.—In an action on a life insurance policy, in which the insurer claimed a forfeiture for nonpayment of the premium due, the insurer was not bound by the statement of its soliciting agent, upon payment of the premium note by insured's attorney after such forfeiture, that the policy was a subsisting contract.

Appeal from Lonoke Circuit Court; *George W. Clark*, Judge; reversed.

*T. D. Wynne,* for appellant.

The faiure to pay the premium note when due voided the policy. 75 Ark. 25; 74 Ark. 507; 25 Cyc. 827; 28 N. J. Eq. 167; 43 N. Y. 283; 86 Pa. St. 171; 75 S. W. 735; 86 S. W. 618; 28 S. W. 411; 187 U. S. 335; 104 U. S. 252; 230 S. W. 257; 78 Ark. 127; 85 Ark. 337; 104 Ark. 288; 87 Ark. 70; Bacon on Life & Accident Insurance, vol. 2, § 476. Receipt by the company of a premium note is only *prima facie* evidence that the premium has been paid, but that such presumption could be overcome by proof to the contrary. 87 Ark. 70; 28 S. W. 411; 67 S. W. 941. An insurance company is not required to declare a forfeiture on an insured's failure to comply with the conditions of the policy. 78 Ark. 507; 75 Ark. 28; 79 Ark. 38; 81 Ark. 145; 85 Ark. 337; 104 Ark. 288; 8 Ark. 563.

*Williams & Holloway,* for appellee.

The payment of a premium on insurance may be made by property or note, or by the obligation of a third person, as well as by money. 94 Ark. 578; 127 S. W. 966. An insurance company is bound by the acts of its agent. 75 Ark. 98; 86 S. W. 817; 75 Ark. 25; 86 S. W. 814; 96 S. W. 365; 81 Ark. 160; 190 S. W. 446; 76 Ark. 328; 88 S. W. 950; 12 Wall. 285. It was a question for the jury to say whether or not Towler had authority to extend the time of payment of the note. 1 Cooley's Briefs on Insurance, p. 345; 81 Ark. 160; 98 S. W. 694; 36 Okla. 733; 29 Pac. 865; 62 Ark. 562; 36 S. W. 1051; 54 Am. St. Rep. 305

SMITH, J. This is a suit to recover on a policy of insurance issued by appellant insurance company upon the life of D. E. Haskins. There was a verdict in favor of the plaintiff, the beneficiary, and a judgment accordingly, from which is this appeal.

Policies were written on the lives of both Haskins and his wife, the applications therefor having been taken by one Towler, who was a soliciting agent for the insurance company. Towler was only a soliciting agent,

and his authority was limited to accepting and forwarding applications for insurance, delivering policies of insurance, collecting premiums and taking notes therefor and forwarding the same to the company. He had the authority also to execute binding receipts for any premiums paid.

The policies were delivered on September 16, 1920, at which time Towler executed and delivered a receipt acknowledging payment of premium for one year. The premium was in fact paid by a note due on or before November 15, 1920, for the amount of the premium, the note being made payable to the order of the insurance company. The note contained the following stipulation: "This note given in payment of first annual premium on policy No. 19405 issued to me by the Home Life & Accident Company. If this note is not paid at maturity, said policy and all risks secured thereby shall terminate, and said policy shall become null and void; but the full amount of the premium on said policy shall be considered as earned premium thereon, while said policy was in force, and this note shall be payable without reviving said policy."

The policy itself provided that "if any premium or installment thereof is not paid when due, this policy shall be *ipso facto* null and void, and all premiums forfeited to the company, except as herein otherwise provided."

The policy also contained the following provisions: "Reinstatement of this policy, in event of default of premium payment may be made, unless the cash surrender value has been paid, at any time upon presentation at the head office of evidence of insurability satisfactory to the company, and payment of all past due premiums, and the payment of reinstatement of any indebtedness to the company hereon or secured hereby, with cost, at a rate not exceeding 6 per cent. per annum."

The insurance company sent the note for collection to a bank at Humnoke, Arkansas, and the bank notified the insurance company that the note had not been paid.

Thereupon the insurance company directed the bank to deliver the note to Towler for collection, and Towler received it for that purpose. Towler failed to collect the note, and on June 17th gave it to C. V. Holloway, an attorney, for collection. Holloway testified that before accepting the note for collection he stated to Towler that he would first see if it was satisfactory with Haskins for him to do so, as Haskins was his client. Holloway at the time was negotiating a loan for Haskins, and, after seeing Haskins, Holloway advised Towler that he would collect the note and that he would guarantee payment thereof as soon as Haskins obtained his loan, and Holloway stated further to Towler that if this was not satisfactory he would advance the money to pay the note, but Towler said this was not necessary and would not be required.

The insured died July 11, 1921, and Holloway paid Towler the note on July 20, 1921.

Towler testified that he had no authority except that of a soliciting agent, and that he was interested in the note to the extent of his agent's commission. He did not remember—but did not deny—that Holloway had told him that, if payment were demanded at the time the note was delivered to Holloway, he (Holloway) would pay it then. Witness was largely indebted to the company, and the note at all times belonged to the company. In March, 1921, witness had a settlement with the company and gave it his note for forty-five hundred dollars, which was the ascertained balance due by him, and witness indorsed all notes in which he had an agent's commission to the company, so that when the notes were collected by the company his commissions would be applied to his account. Haskins' premium note was then long past due, and the effort of witness to collect the note was made for the benefit of the company, and, had it been collected, the company would have given him credit for his agent's commission. Towler further testified that when the note was paid he forwarded the proceeds to the company; and, in view of the jury's verdict, we assume this was true,

although the superintendent of the company denied that the company had ever received the proceeds arising from the collection of the note.

The company's superintendent further testified that the policy lapsed when the note fell due and was not paid, and that the company lapsed it by taking it out of its files and marking the insurance not in force on the company's books. Towler was notified of this action, but the insured was not. The company was not required, however, to give the insured notice of the forfeiture. *Patterson* v. *Equitable Life Assurance Society,* 112 Ark. 171. The insured was notified, however, thirty days in advance when the premium note would become due. The superintendent also testified that the company endeavored to collect this note, and that it did so because of the provision of the note giving it that right, and that the policy would not have been revived had the collection been made, and that there was no attempt to reinstate the policy, and that the policy provided that reinstatement could be made only upon a showing by the insured that he was in good health at the time of his application for reinstatement, and such is the provision of the policy, as shown by the excerpt set out above.

The simultaneous delivery of the policy of insurance, the receipt for the premium, and the note for the premium, constitute a single contract which should be read together. *Fidelity Mutual Life Ins. Co.* v. *Bussell,* 75 Ark. 25, 29; *Robnett* v. *Cotton States Life Ins. Co.,* 148 Ark. 199, 205, 206.

The policy provides that failure to pay any premium or installment thereof when due except as otherwise provided in the policy, renders the policy void. The policy also provided the manner of reinstatement when once the policy had lapsed, as shown in the excerpt therefrom set out above. The receipt acknowledged payment of premium had been made, and the receipt was, of course, evidence of the recited facts therein contained; but only *prima facie* so. The note was the payment referred to in

the receipt, and this note recited that if it was not paid at maturity the policy should become void, but the full amount of premium on the policy should be considered as earned premium while the policy was in force, and that the note should be payable without reviving the policy.

The meaning of the language quoted is plain and unambiguous, and courts must enforce the contracts of parties as they themselves have made them, and the provision of a premium note that the policy should forfeit upon nonpayment of the note is uniformly upheld, and has been upheld by this court. *Fidelity Mutual Life Ins. Co.* v. *Bussell*, 75 Ark. 25; *Robnett* v. *Cotton States Life Ins. Co.*, 148 Ark. 199; *Patterson* v. *Equitable Life Assurance Society*, 112 Ark. 171; *Pacific Mut. Life Ins. Co.* v. *Carter*, 92 Ark. 378.

So also has the provision of the note been upheld that the note shall be payable as premium on the policy for the time it was in force before default without reviving the policy. *Jefferson Mutual Ins. Co.* v. *Murray*, 74 Ark. 507; *Williams* v. *Albany Ins. Co.*, 19 Mich. 451; *Robnett* v. *Cotton States Life Ins. Co.*, 148 Ark. 199; *Patterson* v. *Equitable Life Assurance Society*, 112 Ark. 171, 179; *German-American Ins. Co.* v. *Harper*, 75 Ark. 98.

The note was due November 15, 1920, and was not paid, and the company canceled the policy upon its books and withdrew it from the files of policies which were in force. This the company had the right to do, and its liability under the policy was at an end, unless it thereafter did something to revive it.

The next thing that did occur was the settlement between Towler and the company, whereby Towler gave the company his note for forty-five hundred dollars and the company took over his commissions in the notes outstanding for premiums. But whatever Towler's original interest in the proceeds of the note may have been, the entire amount thereof was due the company, so far as the insured was concerned.

The next thing that occurred was the placing of the note in the hands of the attorney for collection, and, as has been said, the company had the right to collect the note without reviving the policy. The policy provided how it might be revived in case it lapsed. This was done by furnishing a certificate that the insured was in good health, and paying any arrears of premiums. It is not contended this was done, and there is no showing that Towler had any authority to reinstate a lapsed policy, nor is there any testimony that any person acting for the company who had the authority to reinstate the policy took that action or was asked to do so.

Instructions were given to the effect that if Towler assumed liability for the payment of the premium with the knowledge and consent of the company, thereby pay ing it, the company would be liable on the policy. The case of *Mutual Life Ins. Co.* v. *Abbey,* 76 Ark. 328, is cited in support of this instruction. The facts in that case were that Remmel, the general agent for the insurance company, was clothed with authority to transact generally the company's business in this State, and to collect the premiums, and was permitted by the company to accept notes to himself in lieu of cash to the company, the company looking to him, instead of the policy-holder, for the cash in such cases. The company required all premiums to be paid in cash, and when Remmel took a note he paid the company the premium, and the note became his individual property. Moreover, there was no stipulation in the notes given for the premium in that case that the policy would forfeit if the note was not paid.

Here the facts are entirely different, and there is no testimony to support the finding that the premium had been paid by Towler's assumption of it. Towler's contract is wholly different from the one under which Remmel operated. The note here was a conditional payment of the premium and belonged to the company, and contained the enforceable recital that the policy would lapse if the note was not paid.

We must, and do, assume that the jury accepted as true the testimony of Holloway that Towler said to him, when the premium was paid to Towler by Holloway, on July 20th, that the policy was a subsisting contract of insurance and that the company would have it to pay. But the company was not bound by this statement, as Towler was without authority to make it.

The court should therefore have directed a verdict in favor of the company, and the judgment of the court below is reversed, and, as the case appears to have been fully developed, it is dismissed.