CITIZENS' NATIONAL LIFE INSURANCE COMPANY *v.* MORRIS.

Opinion delivered June 3, 1912.

1. INSURANCE—FORFEITURE FOR NONPAYMENT OF PREMIUM—WAIVER.—
The fact that a life insurance company was willing to and did extend
the time of payment of a premium did not have the effect to waive
a forfeiture for the nonpayment of the premium at the time when
the note given therefor specified that it should be paid. (Page 293.)

2. SAME—PAYMENT OF DIVIDENDS.—Dividends accruing on a policy of
life insurance must be paid according to the contracts under which
they accrue.  (Page 297.)

Appeal from Mississippi Circuit Court, Chickasawba
District; *Frank Smith*, Judge; reversed.

STATEMENT BY THE COURT.

On June 14, 1905, the Citizens' Life Insurance Company
issued to R. L. Morris a policy on his life in the sum of $5,000
payable at his death to his wife, Mary C. Morris, appellee
herein.  The annual premium was $127, "less the dividends
credited thereon."  The Citizens' National Life Insurance
Company succeeded to all the assets and liabilities of the Cit-
izens' Life Insurance Company.  The Fidelity & Deposit Com-
pany was the surety for the Citizens' National Life Insurance
Company.  On the day the policy was issued Morris became
a member of what is called the "Department of Commercial
Information" of the Insurance Company on his application,
by the stipulations and agreements of which he was obligated
to perform certain specific services for the Insurance Com-
pany, in consideration for which he was to receive compensation
to be estimated by a certain percentage of the premiums col-
lected by the Insurance Company each year.  The sum was
to be computed on the first of January of each year, and on
that date Morris was to be credited with that sum, and same
was to be paid him each year "on the anniversary of the
date of his policy."  Premiums were payable in advance, and
were paid under the policy until June 14, 1909.  On that date
the premium of $127, which was then due, was reduced by
$33.03 which had been credited to Morris January 1, 1909,
on his compensation for services, which left a balance of
$93.97, for which he gave his note with interest at 6 per cent.
per annum payable to the Company October 15, 1909.  The

note contained the following provision: "I understand and agree that in consideration hereof said policy is extended until default is made in payment of this note, when all rights and benefits secured thereby shall cease and determine without notice, and said policy shall be *ipso facto* null and void. I hereby agree that this note shall not be deemed a payment for life insurance, but only for an extension of time for the payment of same, and the nonpayment of this note when due, and the termination of said insurance thereof, shall not impair the validity of this note, but the same shall become due and payable for the proportion of its face and interest that the time the insurance has been extended for bears to the whole time covered by said premium."

The policy provided that premiums "may be paid in half-yearly or quarterly installments, as fixed by the company, provided that when premiums are thus paid the portion of the full year's premium, if any, remaining unpaid at the death of the insured shall be deducted in the settlement of this policy." And, further: "In case any premium should not be paid when due according to the terms of this contract, then and in such case this policy shall cease and determine, except as otherwise herein expressly provided."

Morris died June 7, 1910, and the appellee brings this suit against the appellants to recover on the policy. The appellants defend on the ground that the policy was forfeited because of nonpayment of the premium for 1909. The appellee contends that forfeiture was waived.

On October 5, 1909, the Company wrote Morris that his note of $93.97, with interest at 6 per cent., amounting, principal and interest, to $95.85, would be due October 15, 1909, and asking him to give it his prompt attention. The letter contained the following clause: "Important. Notes given for extension of time in payment of renewal premiums should be paid on or before maturity to prevent lapse of policy. Said notes have no grace period."

They wrote him to the same effect on October 9, 1909. On October 20, 1909, the Company wrote Morris, telling him that it was without remittance to cover the note, and saying: "The agreement on the face of the note provides that payment shall be made on or before maturity. If not

so paid, the policy becomes null and void. However, it will be reinstated upon approval by the company of the enclosed health certificate and payment of half of the face of the note, with interest at 6 per cent. to October 15, 1909." And further: "If the policy is reinstated, the company will grant additional time in which to take up the balance of the note. This proposition is made merely as a matter of accommodation, as we would not have you abandon a policy that you can not possibly duplicate."

In answer to this letter Morris sent the health certificate, which, among other things, contained the following provision: "It is understood that future payments on said policy, if revived, shall be promptly made."

On the 30th of October, 1909, the Company acknowledged receipt of the health certificate and revival contract executed by Morris, and stated in the letter that same had been approved and the policy reinstated. The letter also stated: "We have, therefore, credited your remittance for $47.95 on the above described note, which leaves a balance of $49.90, which we have extended to January 15, 1910, at 6 per cent. interest."

On January 5, 1910, the company wrote Morris reminding him that the balance of $47.90 and 72 cents interest, total $48.62, would "be due 1-15-10." The letter closed with the following: "Important: Notes given for extension of time in payment of renewal premiums should be paid on or before maturity to prevent lapse of policy. Said notes have no grace period."

On January 19, 1910, the Company wrote Morris that they had extended the note to February 15, 1910. They again wrote him February 5, and February 10, 1910, reminding him that his note would be due on the 15th, and that it had to be paid "on or before maturity to prevent lapse of the policy."

On February 21, 1910, the Company wrote Morris, saying: "The agreement on the face of the note provides that payment shall be made on or before maturity. If not so paid, the policy becomes null and void. However, it will be reinstated upon approval of the company of the enclosed health certificate and payment of half of the balance due, say $24.90, with interest at 6 per cent. on the full amount to

February 15, 1910, 96 cents. If the policy is reinstated, the Company will grant an extension of sixty days in which to take up the balance of $23.00."

On March 2, 1910, the Company wrote Morris as follows: "Your note given June 14, 1909, to extend the payment of premium on your policy until February 15, 1910, has not been paid, and under its terms this policy is lapsed; but the Company expects payment of the premium earned for the time it was on the risk by reason of the extension of premium by said note. That is, you enjoyed protection for the full face of policy from June 14, 1909, to February 15, 1910, a period of eight months. The amount of premium earned is $15.59, with interest, 96 cents, on full amount of balance. Please let us have this amount by return of mail if possible, but we think you will be doing a much wiser thing to remit the full amount of the balance ($15.59, interest 96 cents), thus giving yourself the protection afforded by your policy for another year, if the policy is reinstated." With this letter was enclosed a health certificate with the request to execute same and return. The letter concluded: "Upon reinstatement of the policy we will mark the note 'Paid' and forward to you, together with premium receipt for premium due June 14, 1909."

On June 7, 1910, the secretary of the Company wrote Morris, saying: "My attention has just been called to the termination of your policy No. 1523. As the nonpayment of premium may have been an oversight, I take the liberty of writing to ask if you will let me hear from you personally about the reason for discontinuance, as this may afford the opportunity to furnish any desired information, or to offer some suggestion that may be of advantage to you."

The appellants, after setting forth what they conceived to be the facts as to the course of dealings between the parties, prayed the court to instruct the jury that such course of dealings "was not such as to justify Morris as a reasonable man in believing that he was still insured after February 15, 1910; and if the note or any part thereof was unpaid at the date of his death, they should find for the appellants." The court refused to so instruct the jury, but gave, among others, the following instruction:

"If you find from the entire course of dealings between

deceased and defendant from first to last that the conduct of defendant was such as would naturally lead a reasonable and prudent business man to believe that premiums would be accepted by the defendant after they were due, and that a forfeiture of the policy would not be claimed on account of the failure to make payments promptly at maturity; and if you find that the deceased was so led to believe, then I instruct you to return a verdict for the plaintiff."

Other instructions were to the same effect. The verdict and judgment was in favor of the appellee for the sum of $5,000. Other facts stated in the opinion. The appellants have duly prosecuted this appeal.

*Helm Bruce* and *Allen Hughes,* of Memphis, for appellants.

Under the provisions of the note due June 14, 1909, which was never paid, and of the policy, as to the effect of nonpayment, there can be no recovery in this case. 75 Ark. 25; 85 Ark. 337; 104 U. S. 259; 3 Cooley's Brief on Ins. 2706, 2709; 74 Minn. 387; 71 Vt. 482; 143 Mass. 438; 6 L. R. A. (N. S.) 1042; 49 L. R. A. 737; 107 S. W. 688; 91 Va. 169; 44 Conn. 72; 63 Fed. 769; 98 Fed. 250; 118 Fed. 250; 84 S. W. 425; 100 Pa. 172; 18 S. W. 165; 64 Ia. 134; 207 Pa. 609; 10 L. R. A. 577.

*J. T. Coston,* for appellee.

1. If the policy forfeited on January 15, or February 15, 1910, the continued efforts to collect the unpaid balance until March 1 thereafter was, in effect, an election by appellant to waive the forfeiture and look to Morris personally for the debt. 3 Cooley's Brief on Ins. 2704; 28 So. 652; 46 S. W. 517, 518; 46 S. W. 519, 520. Forfeitures are not favored in law, and a forfeiture once waived can not be recalled. 126 S. W. 722; 68 S. E. 1085; 3 Cooley's Briefs, 2472.

2. Morris was entitled to $32.06 dividend on his service contract January 1, 1910, and it was appellant's duty to apply this dividend toward the payment of the 1909 premium and thereby prevent a forfeiture. 2 Words & Phrases, 1712; 9 C. B., 570; 60 Md. 469; 2 Cooley's Briefs, 922; *Id.* 993; 67 S. W. 20, 21; 73 S. W. 1021; 58 S. W. 361; 39 Wis. 406.

It was the duty of the court to resolve any doubt or

ambiguity in the wording of the contract in favor of Morris, or to submit it to the jury. 65 Ark. 59; 1 Cooley's Briefs, 630; 30 S. E. 927.

The company had no right to declare a forfeiture without first notifying Morris of the amount of his dividend, and giving him credit for it. 58 S. W. 361; 3 Cooley's Briefs, 2283; 106 U. S. 37; 97 Pa. 26.

The course of dealing pursued by the company toward Morris amounted to an express waiver, and, notwithstanding the printed notices calling attention to the forfeiture provisions of the note, these were more than offset by the company's letters assuring Morris, in substance, that it would not insist upon a forfeiture. 44 N. E. 799; 86 Pa. St. 239; 3 Cooley's Briefs, 2709; 144 U. S. 449; 93 Fed. 753.

WOOD, J., (after stating the facts). The whole course of dealings between the insurance company and Morris was such as to lead him or any other reasonable and prudent business man to believe that unless he paid the premium note at the times specified by the company his policy would be forfeited. Every time (except one, January 19, 1910) when the extensions of time for payment of the premium note were made the company distinctly notified him that unless the note was paid at the time specified his policy would lapse. The failure to give him such notice in the letter of January 19, 1910, in which the company notified him that the time for payment had been extended to February 15, 1910, would not constitute a course of dealing such as to warrant a belief on his part that the company would not insist on a forfeiture for a failure to pay the premium note at the time specified for such payment.

As is said by Mr. Cooley: "Indulgence on one or two or a very few occasions is certainly insufficient to show a custom or course of dealing which will justify the insured in believing that indulgence will as a matter of course be granted as to subsequent premiums." 3 Cooley's Brief on Insurance, pp. 2706, 2709.

The note given for the payment of the premium falling due June 14, 1909, expressly provided that the policy was extended "until default is made in payment of this note, and all rights and benefits secured thereby shall cease and determine without notice and said policy shall be *ipso facto* null and void."

This was sustantially a reiteration of the provision of the policy that unless the premiums were paid when due the "policy should cease and determine." This provision in the policy and note, constituting the contract between the parties as to the effect of the nonpayment of the premiums, was not waived by merely extending the time specified for the payment of such premiums.

The indulgence on the part of the insurer towards the assured in extending the time for payment of a premium does not have the effect to waive a forfeiture for the nonpayment of the premium at the time when it is specified that same shall be paid. The extension of the time of payment does not do away with the provision terminating the policy if the premium is not paid according to the contract between the parties.

. The language of Mr. Justice Bradley, in *Thompson* v. *Insurance Co.*, 104 U. S. 259, is quite pertinent here. He says: "As long as the assured continued in good health, it is not surprising, and should not be drawn to the company's prejudice, that they were willing to accept the premium after maturity, and waive the forfeiture which they might have insisted upon. This was for the mutual benefit of themselves and the assured at the time; and in each instance without involving any waiver of the terms of the contract in reference to their future conduct. The assured had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion, or on a number of occasions, as a ground for claiming it on all occasions. If it were otherwise, an insurance company could never waive a forfeiture on occasion of a particular lapse without endangering its right to enforce it on occasion of a subsequent lapse. Such a consequence would be injurious to them and injurious to the public."

The evidence shows that Morris did not pay the premium at the time when the same was due, and that the company was willing to indulge him by extensions of time for such payments, but every extension was to a definite day, and in none of the letters granting the extensions was there any indication that the company would not insist on a forfeiture of the policy according to its provisions and the provisions of the note if the same were not paid at the time specified; but, on the contrary, Morris was unmistakably notified that a failure to pay

the premiums at the time caused the policy to lapse. In the letters written him before the times for payment had expired they warned him that the policy would lapse if the payments were not made, and in the letters written him after the time for payment had expired they notified him that the policy had lapsed, but would be reinstated and continued with an extension of time for the payment of the premium note to a day certain upon a certificate of good health.

The Supreme Court of Massachusetts, in *Crossman* v. *Mass. Benefit Association*, 143 Mass. 438, says: "The evidence shows that the deceased was habitually unpunctual in paying his assessments, and that, in many instances, the defendant received the assessments after they were due, and reinstated him as a member of the association. This was a waiver of these several forfeitures. But there is no evidence to show that the defendant intended to waive the future prompt payment of assessments as one of the conditions of the contract, or that the deceased, as a reasonable man, was led to believe by its actions that it had waived this condition."

See also other authorities in appellant's brief to same effect.

An examination of the cases of *Moreland* v. *Union Central Life Ins. Co.*, 46 S. W. 516, and *Union Central Life Ins. Co.* v. *DuVall*, 46 S. W. 518, will discover that the facts in those cases differentiate them from the case at bar. In those cases, after there was a forfeiture for nonpayment of the premium note, the insurance companies indicated clearly their intention not to insist on a forfeiture of the policies, but on the payment of the notes. The appellee relies on those cases, but a reference to the facts stated therein will show that they are not in conflict with the doctrine here announced. The same may be said of *Girard Life Ins. Co.* v. *Mutual Life Ins. Co.*, 86 Pa. St. 239, and *Hartford Ins. Co.* v. *Unsell*, 144 U. S. 449.

The insurance agent testified that the company was trying to collect the note up until the 1st of March, but the letter written on the 2d of March, 1910, shows clearly what he meant by saying he "continued to try to collect it up until the 1st of March." That letter states that the policy had lapsed, and that the company was expecting pay for the premium earned "for the time it was on the risk by reason of the exten-

sion of the premium by said note," a period of eight months. The company had the right to retain the note after the forfeiture to collect this earned premium. True, the company in that letter urged him to pay the balance on his regular premium and continue the policy by reinstatement, "on signing the enclosed health certificate." Nowhere in the record do we find that the company led Morris to believe that, without the payment of the premium at the time specified for such payment, his policy would be kept alive one moment. On the contrary, the undisputed evidence shows that the company advised him that the payment of the premium at the time specified for such payment was essential to the life of the policy.

The appellee contends that, by analogy to declared dividends, Morris, on the 1st of January, 1910, had to his credit with the company the sum of $32.06, the amount of his compensation on his service contract. But under the express terms of this contract the amount credited to him was to be paid him "each year on the anniversary of date of this contract," which was June 14, the date for the annual payment of premiums on the policy of insurance. Morris had already received on his premium accruing June 14, 1909, all the credit that was due him for compensation under his service contract. In his application for that contract there was the following provision: "I agree that such contract shall terminate, and all compensation thereunder cease, should I fail or refuse to carry out the provisions of this agreement, except that, when I cease to be the authorized agent of the company, the compensation in said contract agreed to be paid shall continue to be paid annually so long as insurance to the amount of $5,000 placed by my efforts or assistance with the company while I was its authorized agent, on which the regular premiums shall be paid each year, shall remain in force." And the further provision: "I shall not solicit insurance or make or transmit any application for insurance, or collect premiums or deliver any policy after the present current calendar year."

There was no evidence that any insurance had been placed by the efforts of Morris, except his own, for the sum of $5,000, and under the above agreement no compensation was due him unless the $5,000 of insurance placed by his efforts "remained in force" by the payment of the regular premiums each year.

It will be seen from the above that Morris was not entitled to compensation unless he paid the regular annual premium; and when he failed to pay that of 1909, before his death, the company owed him nothing on his service contract. The company, therefore, was not estopped from asserting a forfeiture by its conduct in failing to credit Morris on his premium note of 1909 with the amount that would have been due him on June 14, 1910, had he kept his policy of $5,000 in force by the payment of his premium.

Dividends accruing under policies of insurance must be paid according to the contracts under which they accrue. The rule requiring accrued dividends to be applied to the payment of premiums to prevent forfeiture, as held in *Union Cent. L. Ins. Co. v. Caldwell*, 68 Ark. 505, has no application here because of the peculiar provisions of the insurance contract under consideration.

We can not agree with learned counsel for appellee that the provisions of the policy and note as to forfeiture for nonpayment of premium were superseded by the contract of reinstatement, as set forth in the "certificate of health and renewal contract" executed by Morris on the 25th day of October, 1909, and approved by the company October 29, 1909. On the contrary, this renewal contract expressly provides that "such revival shall not constitute a precedent nor in any way change or modify any of the provisions of said policy contract." The renewal contract simply revived the policy with all of its provisions.

The court can not make contracts for the parties, and it is its duty to enforce them as the parties have made them. The plain and unmistakable meaning of the contract which appellee is now seeking to enforce only gave to appellee the benefit of the insurance under the policy provided Morris paid the premiums, which he did not do before his death; and to compel the company to pay it for him after his death in order that his widow may obtain the sum of $5,000, it seems to us, would be directly contrary to the provisions of the contract which the parties made for themselves.

The court erred in its instructions and in not directing a verdict for appellant.

The judgment is reversed, and the cause is dismissed.