ROBNETT v. COTTON STATES LIFE INSURANCE COMPANY.

## Opinion delivered April 11, 1921.

1. INSURANCE—NONPAYMENT OF PREMIUMS—FORFEITURE.—A life insurance policy based on the consideration of the payment of the premiums when they fall due is forfeitable for nonpayment of such premiums, though there was no provision in the policy declaring a forfeiture for that cause.

2. INSURANCE—"BLUE NOTES"—VALIDITY.—"Blue notes," or notes accepted by a life insurance company for the amount of premiums due on the policy, which provide for the continuance of the policy in force until the due date of the notes, are valid.

3. INSURANCE — NONPAYMENT OF PREMIUM NOTE.—Where a "blue note," accepted by an insurance company as the balance of a life insurance premium, provided that it was so accepted on the express agreement that if it was not paid on the due date the company could retain the cash already paid as compensation for having continued the insurance, such provision was inconsistent with the contention that the cash payment should be applied to extend the life of the policy beyond the due date of the note.

4. INSURANCE—GRACE FOR PAYMENT OF PREMIUM.—A provision in a life policy giving thirty days' grace for the payment of any premium does not extend a similar period of grace for the payment of a premium note, accepted by the company on condition that the policy should be forfeited if the note was not paid when due.

5. INSURANCE—FORFEITURE OF POLICY—WAIVER.—The fact that an insurance company waived its right to forfeit the policy for nonpayment of the first "blue note" given by the insured for an annual premium when it fell due by accepting a second note did not constitute a waiver of the right to forfeit the policy for nonpayment of the second note when it fell due nor estop it from asserting such forfeiture.

Appeal from Arkansas Circuit Court, Northern District; *W. B. Sorrells,* Judge; affirmed.

*Chapline & Morrison,* for appellant.

The court erred in directing a verdict for appellee.

The terms of an insurance contract are construed strictly against the insurer, since the policies are issued on printed forms prepared by the insurer, and the insured has no voice in the preparation. 217 S. W. 462. An insurance company is not required to declare a forfeiture on the failure of the insured to pay a premium note when due, but the rule is different where the policy merely provides that on insured's failure to pay the premium within a specified time after it becomes payable the company shall be at liberty to cancel it without further notice. In such cases the policy does not become void merely by nonpayment of the premium, but remains in force until *affirmative action* is taken by the company to cancel it. 112 Ark. 171; 3 Cooley's Briefs on Ins., p. 2278. The general rule has no application here, for the policy contains no mandatory provision, and no affirmative action was taken by the company until after the tender of the balance due on the premium.

Forfeitures are odious in the eyes of the law, and a default in payment of a life premium does not forfeit a policy where there is no stipulation to that effect. 159 Ill. 476; 6 Jones, L., 51 N. C. 558; 7 Ohio Dec. 118. There is no express stipulation for forfeiture in the policy because of failure to pay the annual premium on the date fixed, nor any provision of like import from which an inference might be drawn that a failure to pay the premium *ad diem* would automatically cancel or render the policy void. 84 Neb. 682; 19 A. & Eng. Ann. Cases 59-64. See 93 U. S. 24; 21 U. S. (1 ed.) 789. The policy here did not lapse but continued in force until affirmative action was taken to declare a forfeiture, and none was ever taken before the tender, and the company is now estopped.

The automatic cancellation in the note is in direct conflict with the terms of the policy. Payment of an annual premium is not a condition *precedent* but *subsequent* only. 104 U. S. 303; 144 *Id.* 430-51.

Part payment (as here), accepted by the company after maturity, waives a forfeiture. 25 Cyc. 870, note b.; 41 S. W. 680.

Where there is a conflict between the policy and the note, the policy governs. 4 Mo. 386; 36 Okla. 733; 44 L. R. A. (N. S.) 376.

After a company has once waived its right to declare a forfeiture, can not subsequently avail the effects of such waiver. 53 Ark. 494; 19 Cyc. 872.

The evidence shows payment of the first and second annual premiums. A note marked paid is conclusive. 104 Ark. 367. The tender was made within the customary period made by agreement and the company is estopped from declaring the policy lapsed. 104 Ark. 288; 62 Ga. 250.

Appellant is entitled to judgment for the amount sued for and interest, penalty and costs and attorney's fees. 133 Ark. 223.

*Holmes & Canale* and *C. E. Pettit,* for appellee.

Appellant complains (1) because the court enforced the provisions of the "blue note" and (2) because the trial court did not hold that the company waived the lapse of the policy. Our own court, and practically all others, have decided adversely to the contentions of appellant. The "blue note" has been often upheld. 104 Ark. 288; 220 S. W. 803; 89 S. E. 445; 86 N. E. 928; 177 Fed. 842; 228 U. S. 364. See, also, 74 Ark. 508; 75 *Id.* 25; 85 *Id.* 337.

WOOD, J. This is an action brought by the appellant against the appellee to recover the sum of $5,000 on a policy of life insurance issued by the appellee to the husband of appellant, and in which the appellant was the beneficiary. The appellant set up the policy, alleged the

death of the insured and a compliance with all the terms of the policy necessary to create liability against the appellee.

The appellee answered and denied that the insured had complied with the terms of the policy by paying the second annual permium, and set up that the policy was forfeited because of that fact. The undisputed testimony showed the issuance of the policy by the appellee to the husband of appellant, and that the appellant was the beneficiary in the policy; that the insured was dead, and that the appellant was entitled to recover on the policy, provided the provisions of the insurance contract as to the payment of premiums had been complied with. The testimony on that issue is substantially as follows: The annual premium on the policy was $154. The first premium was paid. The second was due October 19, 1919. At that time the insured was unable to pay the second premium, and he arranged with the appellee to extend the time for the payment of this premium by paying the sum of $14 in cash and executing a note for the balance of $140, dated October 20, 1919, and payable on or before January 1, 1920. When the note became due, the insured was still unable to pay. After several letters had passed between the insured and the appellee with reference to the payment of the note evidencing the balance due on the second premium, the insured paid to the appellee the further sum of $100 in cash and executed the following note:

"$42.36.                                    January 30, 1920.

"On or before March 1, 1920, after date without demand or notice I promise to pay to the order of the Cotton States Life Insurance Company forty-two and 36/100 dollars at its home office in Tupelo, Miss., value received, with interest at the rate of six per cent. per annum. This note is accepted by the said company at the request of the maker as balance on premium on the following express agreement: That, although no part of the premium due on the 19th day of October, 1919, on the policy No. 3103, issued by said company on the life

of Allie E. Robnett, has been paid, the insurance thereunder shall be continued in full force until midnight of the due date of said note; that, if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that, if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said company shall retain said cash as part compensation for the rights and privileges hereby granted, and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made; that said company has duly given every notice required by its rules or by the laws of any State in respect to said premium, and in further compensation for the rights and privileges hereby granted the maker hereof has agreed to waive, and does hereby waive, every other notice in respect to said premium or this note, it being well understood by said maker that said company would not have accepted this agreement if any notice of any kind were required as a condition to the full enforcement of all of its terms.''

After receiving the above note the appellee mailed the insured the former note, which was marked paid. On the 23d day of February, 1920, the appellee wrote to the insured as follows:

''Your premium extension note for $42.36 (which includes accrued interest) given on account of policy No. 3103 in this company will be due March 1, 1920, and payable at this office. Please remit promptly, as this obligation provides that the policy will lapse unless payment is made by the date due.''

This letter was received at the postoffice at Almyra, Arkansas, in due course. The insured at that time, however, was not at his hime in Almyra, and the appellant did not personally receive the notice until March 3, 1920.

On March 4, 1920, the appellee received from appellant through one Paul W. Daniels of Stuttgart, Arkansas,

a check for $42.64, dated March 3, 1920, drawn on the Exchange Bank of Stuttgart, Arkansas, signed by H. G. Miens, which was tendered in payment of the blue note above mentioned, and on March 4, 1920, the appellee returned the check in a letter to Daniels which was received by him on March 5, 1920. In the letter to Daniels the appellee stated that it refused to accept the check for the reason that the policy ceased to be in force at midnight on March 1, 1920, at which time also the note of the insured automatically according to its terms ceased to be a claim against him—that the policy had lapsed. In this letter the appellee enclosed a blank for reinstatement, and stated that it would be pleased to reinstate the policy upon proper settlement of the premium and satisfactory evidence of the good health of the insured. On March 6, 1920, the insured died, and on March 8, 1920, the appellee first heard of his death.

Among others, the policy contained the following provision:

"If any premium shall not be paid on or before the date when due, and if there be no indebtedness to the company, the insurance will automatically continue from said due date as term insurance during the term, including the period of grace, specified in column three (3) of the accompanying table."

The accompanying table showed that, upon the nonpayment of the premium when due at the end of one year, the insurance was automatically continued for one month. There was a grace of one month for the payment of all premiums except the first. The policy was nonforfeitable from the date of issue except for *nonpayment of premiums*. The payment of premiums in advance on the 19th day of October of every year continued the policy in force during the life of the insured for twenty years, after which the policy was continued during the life of the insured without further payment. The plan of premium payments could be changed so that premiums might be paid in quarterly or semi-annual installments. or changed from such form to annual, on any an-

niversary of the policy by application in writing to the home office of the company. In case of default in the payment of any premium or interest the company would reinstate the policy at any time * * * upon written application by the insured to the company at its home office with evidence of insurability satisfactory to the company and the payment of all premiums that would have been paid in the intervening time if no default had been made, etc. The policy had no cash reserve or loan value until after the beginning of the third policy year.

The court instructed the jury over the objection of appellant to return a verdict in favor of the appellee, to which ruling the appellant duly excepted. The verdict was returned as directed, and a judgment was rendered in favor of the appellee from which is this appeal.

While there is no provision in the policy expressly declaring a forfeiture or that the policy shall lapse or be null and void in case of the nonpayment of premiums at their due dates, yet the various provisions of the policy concerning the payment of premiums show clearly that such payments at the date when due were essential to the continuance of the contract of insurance. These payments were a consideration for the contract, and, unless they were made at the time specified therein or their payment at such time waived by the appellee, there was no enforceable contract of insurance beyond the term provided for in the policy. The first premium was paid, and under the policy the insurance automatically continued for one month after the due date of the second premium, whether such premium was paid or not. Beyond this term, inasmuch as the policy at that time had no cash reserve or loan value, whether or not the insurance was to continue and for how long until the second premium was paid, was a matter purely to be determined by the contract between the parties, if they entered into a contract concerning it. This they did by the execution on the part of the insured, and the acceptance on the part of the company, of what is commonly known in insurance terminology as "blue notes." The validity of these blue

notes, or notes of like character, providing for the extension of time of the payment of premiums and the continuance of the insurance contract during such time, have been frequently recognized and upheld by our own and other courts. *Citizens' National Life Ins. Co.* v. *Morris,* 104 Ark. 288; *N. Y. Life Ins. Co.* v. *Allen,* 143 Ark. 143. See, also, *American Life Ins. Co.* v. *Hornbarger,* 85 Ark. 337; *Fidelity Mutual Life Ins. Co.* v. *Bussell,* 75 Ark. 25; *Jefferson Mutual Life Ins. Co.* v. *Murray,* 74 Ark. 508; *Slocum* v. *N. Y. Life Ins. Co.,* 228 U. S. 364; *N. Y. Life Ins. Co.* v. *Slocum,* 177 Fed. 842; *White* v. *N. Y. Life Ins. Co.,* 86 N. E. (Mass.), 928; *Hudson* v. *Knickerbocker Life Ins. Co.,* 28 N. J. Eq. 167; *Simms* v. *Jefferson Standard Life Ins. Co.,* 89 S. E. 445. It would unduly extend this opinion, and it is not necessary, to review here the various cases cited by learned counsel in their excellent briefs to support their respective contentions.

The blue note set forth in the statement evidences the contract between the parties for the extension of the time for the payment of the second premium. The insured signed the blue note and was bound by its terms. The undisputed testimony shows that the insured did not comply with its terms, and therefore the appellee is not liable unless it waived noncompliance on the part of the insured, or by its conduct has estopped itself from claiming that the policy was not in force at the time of the insured's death. While the note recites on its face that it is accepted by the company "as balance on premium," its further recitals show that it was so accepted upon the "express agreement" that, if the note was paid on or before the date it became due, such payment of the note together with the cash previously paid would be accepted by the company as the payment of the premium; but, if the note was not paid on or before the due date, then the company was to retain the cash already paid as compensation for having continued the insurance, notwithstanding the failure to pay the premium, from the time the premium was due, October 19, 1919, until the due date of the note, March 1, 1920.

The contract was one which the parties had the right to make, and it is certainly unambiguous in its provisions. In *White* v. *New York Life Ins. Co., supra,* the Supreme Court of Massachusetts, in construing a note which in principle can not be distinguished from the note in controversy, said: "The note was not paid, and for that reason by virtue of the agreement it ceased to be a claim against the maker. The $31.25 in cash was treated as a consideration for the privilege which the insured had enjoyed, and the rights of both parties with reference to the policy were precisely the same as if this note had never been given and the payment in cash had never been made." See, also, to the same effect, *Simms* v. *Jefferson Standard Life Ins. Co., supra.*

The appellant contends that the $114 cash received by the appellee should be considered as a part payment on the annual premium, but this contention is contrary to the provisions of the blue note in controversy as we construe it. Appellant further contends that, if he is mistaken as to this, then the $114 cash should at least be applied as a quarterly or semi-annual payment in order to extend the life of the policy. But this contention is likewise contrary to the provisions of the blue note as well as to the provision of the policy, which provides that the plan of premium payments can be changed to quarterly or semi-annual payments by application of the insured in writing to the home office of the company. This was not done. Besides, the parties have expressly provided in the blue note that the cash received should be considered, in the event of the nonpayment of the note, as part compensation or consideration for continuing the insurance and the rights and privileges of the insured under the policy during the period of extension.

Counsel also contend that the provision of the policy allowing one month's grace for the payment of premiums would have the effect of extending the time for the payment of the premium one month after the due date of the blue note. But this contention can not be sustained for the reason that the blue note covers the provision for

grace contained in the policy and extends the time for the payment of premiums for longer than one month. See *Bank of Commerce* v. *N. Y. Life Ins. Co.,* 54 S. E. 643; *Missouri State Life Ins. Co.* v. *Fry,* 130 Ark. 424.

The only remaining question then is, Did the appellee waive the nonpayment of the blue note when it was due, or has it by its conduct estopped itself from setting up that the note was not paid? The testimony shows that, at the request of the insured, about the time the second premium became due the appellee allowed the insured to pay the sum of $14 in cash and to execute a blue note for the balance of the second premium similar to the one above set forth, extending the time for the payment of the premium to January 1, 1920, and after this note became due the insured and the appellee had considerable correspondence concerning it, which finally resulted in the execution of the second blue note. The correspondence with reference to the first blue note and the execution of the last blue note undoubtedly show that the appellee waived the payment of the first blue note when the same was due and extended the time of the payment of the second premium until March 1, 1920, as expressed in the last blue note upon the terms therein specified. But because the appellee waived the nonpayment of the first blue note and further extended the time of the payment of the second premium to March 1, 1920, as evidenced by the last blue note, is no reason for saying that the appellee waived the nonpayment of the last blue note at the time same was due, or that its conduct with reference to the prior blue note was such as to justify the insured in believing that the appellee would not insist upon the payment of the second blue note at the time same was due, and that its conduct was such as to justify him in failing to pay this note when it was due. On the contrary, while the appellee was not required to notify the insured of the date when this note was due, it nevertheless did write to him on February 23, stating in the letter that the note would be due March 1, 1920, and requesting him to remit

promptly, as his obligation provided that ''the policy will lapse unless payment is made by the date due.''

In *Citizens' Life Ins. Co.* v. *Morris, supra,* we quoted from Mr. Cooley, as follows: ''Indulgence on one or two, or a very few, occasions is certainly insufficient to show a custom or course of dealing which will justify the insured in believing that indulgence will, as a matter of course, be granted as to subsequent premiums.'' When the company extended the period of grace for the payment of the second premium as provided in the first blue note and then again extended the time for the payment of such premium as provided in the second blue note, the insured presumably was in good health; at least there was nothing in the record to the contrary. But the insured died a few days after the due date of the last blue note, and the testimony shows that he was sick three weeks before he died, so he must have been critically ill at the time the last blue note was due.

The continuance of the policy under the provisions of the first blue note on the failure to pay the second premium when due, and likewise upon the failure to pay the first blue note when it became due, the insured then being in good health, certainly would not estop the appellee from refusing to continue the policy when the second blue note became due, at which time the insured was seriously ill. *Thompson* v. *Ins. Co.,* 104 U. S. 259. See, also, *Thompson* v. *Fidelity Mutual Life Ins. Co.,* L. R. A. (N. S.) 1041. It follows that the ruling of the court in directing a verdict in favor of the appellee is correct, and the judgment is therefore affirmed.