## KANSAS CITY LIFE INS. CO. v. FREEMAN.

### No. 9720.

Circuit Court of Appeals, Fifth Circuit.

May 28, 1941.

Rehearing Denied July 14, 1941.

Birkett F. Jordan and Sam T. Dell, Jr., both of Gainesville, Fla., for appellant.

E. A. Clayton and Clark Gourley, both of Gainesville, Fla., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

Appellee brought this suit to recover on a policy, in the amount of $5,000, issued on the life of her husband, under which she was beneficiary, and recovered judgment for the full amount plus interest and at-

torneys' fees. The case was submitted on the pleadings and exhibits and a stipulation as to the facts. It was tried by the Court without a jury.

The material facts are these. The policy was a combination policy providing term insurance for three years for an annual premium of $50.40 and life insurance thereafter, for an annual premium of $182.65 or semi-annual premium of $95.00 or quarterly premium of $48.40, to be fully paid up in 17 years. The policy contained clauses allowing 31 days' grace for the payment of premiums; providing for reinstatement upon satisfactory evidence of insurability and payment of premium arrears; for extended insurance; paid up insurance; cash surrender value; loan privileges on the security of the policy; and loans for the payment of premiums, to be charged against the policy. Extended insurance was automatic. The insured had the option, upon his request within 60 days, to take paid up insurance, receive the cash surrender value or borrow on the policy. However, the policy also contained these further provisions:

"Cash values, extended insurance and paid up values apply from the end of the first year of the period during which the premium for the seventeen-payment life insurance is payable."

This was followed by a table, which so far as necessary to quote, was as follows:

interest per annum and pay $13.65 in cash in settlement. This note was as follows:

"Premium Extension Note.

"Pol. No. 511573

"Kansas City, Mo., October 13, 1933, 19..

"January 13, 1934, without grace, after date, for value received, I promise to pay to the order of the Kansas City Life Insurance Company, at its Principal Office, in Kansas City, Missouri, (169.00) One Hundred Sixty-nine and 00/100 Dollars, with interest at the rate of six per cent per annum, from date until maturity hereof.

"This note, together with $13.65 in cash, is tendered to the Kansas City Life Insurance Company in payment of the annual premium on policy No. 511573 due on the 13th of October, 1933, and upon the understanding and agreement that the same shall not be binding on the Company unless and until accepted by the President or Secretary at the Home Office of the Company in Kansas City, Missouri, and that, if accepted, such acceptance shall be upon the following express conditions and agreements, to-wit:

"That the aforesaid sum of money shall be held by the Kansas City Life Insurance Company until the due date of this note, and if this note be paid when due, then the cash aforesaid, together with the cash paid in discharge of this note, shall constitute payment in full of said premium, and my

| "After the Expiration of | Cash Surrender or Loan | Extended Years | Insurance Months | Paid-Up Insurance |
|---|---|---|---|---|
| 1 year | $137.95 | 2 | 8 | $310" |

And thereafter followed this clause: "The insurance under this Policy being on the term plan during the first three years, there are no Cash Values, Extended Insurance or Paid Up values during that period; the values are from the first year and for the period during which the life insurance premiums are paid, * * *."

There was no provision in the policy allowing payment of premiums in instalments.

When the first payment of a premium under the 17 payments provision of the policy became due, the insured elected to pay on the annual basis and was permitted to execute a premium extension note, dated October 13, 1933, due January 13, 1934, without grace, in the sum of $169 with 6%

rights, the rights of my beneficiary, or anyone claiming under said policy, and the rights and liability of the Company thereunder, shall be the same as though said premium had been paid when the same was due according to the terms of said policy; but if this note is not paid by me when due, according to its terms, then this note shall immediately and automatically cease to be an obligation or claim against me, and the aforesaid sum of money shall be applied by the Company as compensation for the extension of the time of payment of said premium and as the earned premium for carrying my policy for the full amount thereof, under the terms and conditions thereof, until the due date of this note, and my rights, the rights of my beneficiary, or anyone claiming under said

policy, and the rights and liabilities of the Company thereunder shall be the same as though said cash had not been paid or this note given.

"(Signed)     Henry Grady Freeman.
"Address, Boardman, Fla.        (S.)"

On the due date of the note the insured paid $40.34 plus interest of $2.54 which was endorsed on the note and the note was extended to March 13, 1934. On that day he made another payment of $42.03 plus interest of $1.29 and the note was again extended, to May 13, 1934. He made another payment on that date of $42.88 plus interest of 87 cents and the note was further extended to July 13, 1934. He made no further payments on the note and the company held the policy had lapsed and cancelled the insurance. The insured died on November 4, 1934, three months and 22 days after the policy was cancelled, without making any request to the company for reinstatement or for any other privilege and without payment or tender of any further sums on account of premiums.

The District Court reached the conclusion that the contract was subject to two interpretations and the conflict should be resolved in favor of the insured; that the company, having granted an extension of three months for $13.65, could not charge more than double that amount, $27.30 as compensation for the further extension of six months and therefore had in its hands $97.95 belonging to the insured; that it was the company's duty to apply that amount so as to keep the policy in existence for the period of time which the said balance would carry the policy; that since the full semi-annual premium was $95 and the insured died four months and 21 days after the policy was declared lapsed on July 13, the policy was in full force when he died. The District Court cited no authorities to sustain his views.

There is no controlling Florida statute or Florida decision construing a similar agreement. In Jeffers v. Bankers' Life Co., 5 Cir., 71 F.2d 603, we held a similar extension agreement to be a separate and independent contract and upheld its validity. In Robnett v. Cotton States Life Ins. Co., 148 Ark. 199, 230 S.W. 257; Davis v. Mutual Life Ins. Co., 234 Mo.App. 748, 119 S.W.2d 488; White v. New York Life Ins. Co., 200 Mass. 510, 86 N.E. 928, all cases construing similar contracts, it was held that they were valid and enforcible. Appellee has cited a number of cases, which it is unnecessary to review as none of them is in point.

■ Of course, it is settled that if an insurance policy is susceptible of two constructions a court should consider and give effect to the construction most favorable to the insured. But it is equally well settled that if the policy is plain and unambiguous, a court may not write a new contract for the parties on the theory of construing it.

The conclusion of the District Court that the company could not charge more than three times the initial payment of $13.65, a total of $40.95, for granting the extension, overlooks the plain provisions of the note that the money paid was not only compensation for the extension but also covered the earned premium for carrying the policy for the full amount. Necessarily, the company was entitled to be paid for carrying the risk.

■ We may say in passing, purely for the sake of argument, that if, as found by the District Court, the company had in its hands $97.95 that belonged to the insured, the company had no duty to apply that money to the purchase of extended insurance. In fact, it had no right to do so. The insured could have said he did not want extended insurance and demanded payment of the money to him. Pilot Life Ins. Co. v. Owen, 4 Cir., 31 F.2d 862; Union Central Life Ins. Co. v. Williams, 5 Cir., 65 F.2d 240, affirmed 291 U.S. 170, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693; Silverman v. New York Life Ins. Co., 3 Cir., 66 F.2d 554.

■ It is apparent that under the plain provisions of the policy the insured was not entitled to have any of the privileges granted by the policy, except 31 days' grace and reinstatement, until after the first year's premium under the 17 payments plan had been paid in full. It would be carrying interpretation too far to say the company intended to grant the privilege to the insured of taking a cash surrender or loan value of $137.95 or any of the other privileges after paying only $151.20 for three years premium on the term plan. That would leave only $13.25 as compensation for carrying the risk for three years. Cases holding it to be the duty of the insurer to apply the provision most favorable to the insured to keep the policy in force after his death are not in point.

The important conditions of the premium extension agreement were that if the note was not paid at maturity there would be no personal obligation of the insured to pay it and, in that event, any sum of money received by the company would be retained as compensation for the extension of time for paying the premium and as the earned premium for carrying the policy for the full amount thereof until the due date of the note. It is not accurate to say the insured received an extension of three months for the payment of only $13.65 in cash. The consideration for the extension was the cash and the note. It must be presumed both the insured and the company contemplated the payment of the note on its due date.

The further extensions of the note did not change these provisions and all the payments on the note must be considered as covered by them.

The initial cash payment and the additional payments on the note amounted to $138.90. Three quarterly payments would amount to $145.20. It is therefore apparent that the extension agreement was fair and advantageous to the insured. The conclusion of the District Court was purely hypothetical, not based on the facts and had the effect of making a new contract for the parties. The policy lapsed for non-payment of premiums when the note was not paid on its last due date and the company properly cancelled it.

The judgment appealed from is reversed and the cause remanded with instructions to enter judgment for defendant.