BROWN et al. v. NEW YORK LIFE
INS. CO.

Civ. No. L–6114.

District Court, D. New Jersey.

Dec. 3, 1943.

See, also, 32 F.Supp. 443.

Edward Gaulkin, of Newark, N. J., for plaintiffs.

Lindabury, Depue & Faulks, of Newark, N. J. (William L. Dill, Jr., of Newark, N. J., of counsel), for defendant.

SMITH, District Judge.

This is a civil action by Maurice Brown and George Brown, hereinafter referred to as the Beneficiaries, on a policy of insurance, No. 8055587, issued by the New York Life Insurance Company, hereinafter referred to as the Insurer, on the life of Harry Brown, deceased, hereinafter referred to as the Insured. The essential allegations of the respective pleadings may be briefly summarized so as to adequately define the ultimate issue presented for decision. The complaint alleges the issuance of the policy of insurance, the payment of premiums, the death of the Insured, and the due proof of death. These allegations, except the payment of premiums, are admitted. The answer alleges a default in the payment of premiums and the lapse of the policy of insurance by reason thereof. The decision of the court on the ultimate issue makes a consideration of the counterclaim unnecessary.

There has been no proof offered and no question raised as to the place of contract, and it is, therefore, assumed that the contract was consummated in the State of New Jersey; it follows that the laws of this State are determinative of the rights and liabilities of the respective parties. Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290.

### Findings of Fact

I. On October 4, 1921 the Insurer issued a policy of insurance, No. 8055587, on the life of the Insured and in the face amount of $12,500. The initial premium of $215.25 was payable in advance, and all subsequent premiums were payable semi-annually on or before their due date, April 4th and October 4th of each year, or within the period of grace. The initial premium was paid and receipt thereof acknowledged in the policy. All subsequent premiums, as required by the terms of the policy, were paid semi-annually until October 4, 1931, when the default upon which the Insurer relies occurred.

II. There were in force on the life of the Insured, and during the critical period, 1931, two additional policies of insurance, No. 9970050 and No. 9970051, which had been previously issued by the Insurer. The dates of their issuance do not appear and are unimportant in the present suit. The former was in the face amount of $10,000, and the premium thereon of $425.20 was payable annually on or before the due date, August 29th of each year; the latter was in the face amount of $15,000, and the premium thereon of $555.50 was likewise payable annually on or before the due date, August 29th of each year.

III. The Insured, prior to September of 1931 (the exact date does not appear and is unimportant), assigned the policies to the First National Bank of Paterson, hereinafter referred to as the Bank, as collateral security for certain loans previously made. It is admitted that the policies were held by the Bank under the assignment during the critical period.

IV. In September of 1931 the Premium Cashier of the Insurer, pursuant to established office practice, transmitted to the Insured a Notice of Dividend (Exhibit D–4) informing him that there was due and payable to him on Policy No. '587 a dividend of $223.50. The notice, in addition to informing the Insured of the dividend, requested instructions as to either its payment or its application in reduction of premium. The notice, signed by the Insured and countersigned by the Bank, but without instructions, was returned to the Premium Cashier of the Insurer. The failure of the Insured to give such instructions is significant only because of the events which followed.

V. The premiums due on Policies Nos. '050 and '051 were not paid on or before their due date, August 29, 1931, and thereafter, during the period of grace, September of 1931, the Insured applied to the Insurer for loans on the said policies to pay the premiums then past due. The loans to the full extent of the loan value of the respective policies were granted, but the amounts thereof, because of prior loans, were insufficient to pay the premiums in full. The Insurer, with either the express or implied permission of the Insured, applied the dividends payable on Policy No. '587 to the payment of the premiums due

on Policies No. '050 and '051. The said dividends were thus exhausted and the liability of the Insurer therefor ceased. There can be no doubt that both the Insured and the Insurer were fully cognizant of these facts.

VI. At or about the same time, September of 1931, the Insured applied to the Insurer for a loan on Policy No. '587, the policy in suit. This loan, in the full amount of the loan value of the policy, $1,962, was granted, and thereafter, on September 23, 1931, under a Policy Loan Agreement (Exhibit D-9), the full amount of the loan, less a prior indebtedness, was advanced to the Insured. The net proceeds of the loan, $1,398.95, were paid by check (Exhibit D-12) to the order of the Insured and the Bank. The maximum loan value of this policy was thus exhausted.

VII. On October 30, 1931 the Premium Cashier of the Insurer transmitted to the Insured a duplicate Notice of Dividend (Exhibit D-5) again informing him that there was due and payable to him on Policy No. '587 a dividend of $223.50. This notice was accompanied by a letter (Exhibit P-2) in which it was expressly suggested that the premium then past due on the said policy be deducted from the dividend. This notice, signed by the Insured and countersigned by the Bank, was returned to the Premium Cashier, who, pursuant to the instructions therein contained, applied $215.-25 of the dividend to the payment of the premium. An Official Premium Receipt (Exhibit P-3) issued to the Insured, and the balance of the dividend, $8.25, was paid by check (Exhibit D-14) to the order of the Insured and the Bank.

VIII. The said dividend had been previously applied to the payment of the premiums on Policies Nos. '050 and '051, and its application to the payment of the premium on Policy No. '587 was obviously an error. The Insured, as well as the Insurer, under the facts here existing, was chargeable with knowledge that the dividend was not in fact available, having been previously exhausted in the earlier transaction. The knowledge of one was no greater than that of the other.

IX. On November 24, 1931 the Insurer, having discovered the mistake, advised the Insured of it by letter (Exhibit D-18) and requested a remittance of $223.50, the full amount of the dividend. This letter fully informed the Insured that the dividend had been mistakenly applied to the payment of the premium on Policy No. '587 and that the said premium, therefore, remained unpaid. The Insured apparently ignored this letter, and the Insurer by letter dated December 5, 1931 (Exhibit D-19) again advised the Insured of the error and requested a remittance of the dividend. This letter informed the Insured of the nonpayment of the premium and requested an immediate payment. It should be noted that the period of grace expired on November 4, 1931.

X. Thereafter, on or about December 18, 1931, the Insured executed and delivered to the Insurer a promissory note (Exhibit D-21), commonly referred to as a "blue note," a copy of which follows.

"Pol. No. 8055587 S    October 4th, 1931

"On Or Before January 4th, 1932, after date, without grace, and without demand or notice, I promise to pay to the New York Life Insurance Company,

"One hundred forty nine and 62/100 ...... Dollars at its Home Office, 51 Madison Avenue, New York, N. Y., value received, with interest at the rate of five per cent. per annum.

"This note is accepted by said Company at the request of the maker, together with Sixty five and 63/100 ...... ˙ Dollars in cash, on the following express agreement:

"That although no part of the premium due on the 4th day of October 1931, under Policy No. 8055587, issued by said Company on the life of Harry Brown has been paid, the insurance thereunder shall be continued in force until midnight of the due date of said note; That if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said Company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due; That if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said Company shall retain said cash as part compensation for the rights and privileges hereby granted, and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made, except only that the time within which the owner may make a choice of benefits after lapse, as provided in said policy, is hereby extended for three months after the due date of this note, but

no longer; That said Company has duly given every notice required by its rules or by the laws of any State in respect to said premium, and in further compensation for the rights and privileges hereby granted the maker hereof has agreed to waive, and does hereby waive, every other notice in respect to said premium or this note, it being well understood by said maker that said Company would not have accepted this agreement if any notice of any kind were required as a condition to the full enforcement of all its terms.

"$149.62
(Name) ——————
(Address) ——————
(Name)   Harry Brown  /s/
(Address)   c/o Brown Bros. Investing Co.
        21 Mill St.
1.87    Paterson, N. J."

This note was accompanied by a check (Exhibit D–20) in the amount of $73.88, representing a partial payment of $65.63 on the past-due premium and a refund of $8.25, the sum erroneously paid to the Insured on account of the dividend. The balance of the premium, $149.62, was, under the terms of the note, payable on or before January 4, 1932, without grace and without demand or notice.

XI. The said note was not paid on January 4, 1932 and the policy of insurance lapsed by reason thereof. On April 14, 1932 the Insurer, by letter (Exhibit P–4), informed the Insured that the policy had lapsed as of October 6, 1931 because of his failure to pay the "defaulted premium." Thereafter, on May 19, 1932, the Insured, by written application (Exhibit P–11), applied for reinstatement of the policy. The application for reinstatement was rejected on or about June 9, 1932. The Insured died on July 25, 1933.

### Discussion.

■■ Payment of the premium on the policy in question on or before the due date, October 4, 1931, or within the period of grace, was a condition precedent to the continuance of the policy and the right of recovery thereon. The burden was upon the Beneficiaries to prove such payment. Moyna v. Prudential Life Ins. Co., 96 N.J. Eq. 293, 125 A. 99; Ruggiro v. Prudential Life Ins. Co., 113 N.J.L. 561, 174 A. 882. The Beneficiaries, without refuting the clear and convincing evidence that the premium was not in fact paid, rested solely on the official premium receipt as proof of payment. The probative value of this receipt was completely overcome by the positive evidence offered by the Insurer in refutation of it. It is well settled that a receipt, although prima facie evidence of payment, is not conclusive but is open to rebuttal. Husted v. Sugarman, 106 N.J.L. 365, 150 A. 417; Adams v. Camden Safe Deposit & Trust Co., 121 N.J.L. 389, 2 A.2d 361; Joslin v. Giese, 59 N.J.L. 130, 36 A. 680; Kenny v. Kane, 50 N.J.L. 562, 14 A. 597; Anzano v. Metropolitan Life Ins. Co. of New York, 3 Cir., 118 F.2d 430. The erroneous application of the dividends, which were not in fact available, having been previously exhausted, did not constitute payment of the premium.

■■ It is the contention of the Beneficiaries, however, that the Insurer, under the facts here existing, is estopped to deny the admission of payment embodied in the official premium receipt. This contention is untenable because of the complete absence of the elements essential to the defense of estoppel. The elements of an equitable estoppel, as prescribed by the courts of this State, are as follows: (1) that the party against whom the estoppel is urged has, on a previous occasion, made a representation of material facts inconsistent with the facts forming the basis of his present claim; (2) that such party either knew the facts to be otherwise than represented, or, except for gross negligence, would have known that the facts were otherwise than represented; (3) that such representation was made either with the intent to influence the conduct of another, or under such circumstances that a reasonably prudent person would suppose that it was intended to be acted upon as true; (4) that the party to whom the representation was made was ignorant of the facts and had no convenient opportunity to ascertain them; (5) that the latter party in good faith relied upon the representation to his irremediable prejudice. Central Railroad Company of New Jersey v. MacCartney, 68 N.J.L. 165, 52 A. 575; Musconetcong Iron Works v. Delaware, L. & W. R. Co., 78 N.J.L. 717, 76 A. 971, 20 Ann.Cas. 178; Security Credit Corp. v. Whiting Motor Co., 98 N.J.L. 45, 118 A. 695; Ginsberg v. Eastern Life Ins. Co. of New York, 118 N.J.Eq. 223, 178 A. 378, affirmed 120 N.J. Eq. 110, 184 A. 348; Briscoe v. O'Connor, 119 N.J.Eq. 378, 182 A. 855; Smith v. National Commercial Title & Mortgage Guaranty Co., 120 N.J.L. 75, 198 A. 407;

Anzano v. Metropolitan Life Ins. Co. of New York, supra. The burden is upon the party invoking the estoppel to prove all of the elements, and the failure to prove any one or more of them is fatal to this defense. Ibid. It is obvious that the Beneficiaries failed to sustain this burden.

█ It cannot be seriously urged that the Insured either had no knowledge of the facts or no opportunity to ascertain them. It seems reasonably clear that the Insured, as well as the Insurer, had knowledge, or was chargeable with knowledge, that the dividends purportedly available on Policy No. '587 had been previously applied to the payment of premiums on Policies Nos. '050 and '051, and were, therefore, not in fact available. But, even if we resolve this question in favor of the Insured and assume that he had no knowledge of the facts, it cannot be denied that he was afforded adequate opportunity to ascertain them and protect his rights under the policy. The Insurer, having discovered the mistake, informed the Insured of it on November 24, 1931 and again on December 5, 1931, and on each of these occasions requested a payment of the premium; the Insured, however, having thus acquired knowledge of the mistake, did nothing to protect his rights under the policy until on or about December 18, 1931, when he executed and delivered to the Insurer the note in question.

It is equally apparent that the failure of the Insured to pay either the premium or the note cannot be attributed to his alleged reliance on the receipt. This failure was due to either his inability to meet the payment or his gross negligence, and we are inclined to believe from the evidence before us that it was the former. The irremediable prejudice suffered by the Insured was due solely to his own conduct. The argument urged in the brief, that the Insured was illiterate and ignorant, is not supported by the evidence.

█ The Beneficiaries, invoking the statute,[1] R.S. 17:34–16, N.J.S.A. 17:34–16, the pertinent provisions of which are incorporated in section 3 of the policy, contend that the termination of the policy was illegal and void because of the failure of the Insurer to give the Insured notice of such termination, as required by the statute. The legal effect of the note is determinative of the question raised by this contention. If, as the Beneficiaries contend, the note evidenced a loan on the policy and a promise to repay it on or before the due date, January 4, 1932, the termination of the policy was illegal and void in the absence of the required notice; but if, as the Insurer contends, the note was an extension of time for the payment of the premium, the termination of the policy upon the Insured's default was legal and valid. Cf. Paul v. Columbian Nat. Life Ins. Co., infra. The answer to the question must be found in the agreement and the circumstances surrounding its execution.

The case upon which the Beneficiaries rely, Paul v. Columbian Nat. Life Ins. Co., 125 N.J.L. 350, 15 A.2d 636, is distinguishable from the present case on its peculiar facts. It appears from the facts recited in the opinion (1) that the insurer advanced to the insured a loan on the policy of insurance and accepted as security for its repayment an assignment of the policy; (2) that the agreement was the usual policy loan agreement in which the statutory provisions were incorporated; (3) that the loan value of the policy was not exhausted, although the premium due was slightly in excess of it; (4) that the insured, in addition to the policy loan agreement, executed and delivered to the insurer a promissory note for the balance of the premium; (5) that the provisions of the note, especially with reference to the required statutory notice, were in direct conflict with the provisions of the policy loan agreement. These facts clearly support the court's conclusion that the transaction represented a loan on the policy, and that a forfeiture was, therefore, prohibited in the absence of the statutory notice.

---

[1] "On and after January first, one thousand nine hundred and eight, no policy of life insurance shall be issued by a company of this state, or be issued or delivered in this state to a resident thereof by any foreign company, if it contains any provision, as follows:

"a. For forfeiture of the policy for failure to repay any loan on the policy or to pay interest on the loan while the total indebtedness on the policy is less than the loan value thereof, or for forfeiture for failure to repay the loan or to pay interest thereon, unless the provision contains a stipulation that no such forfeitures shall occur until at least one month after notice has been mailed by the company to the last known address of the person to whom the loan was made."

726

The facts in the present case will not support a conclusion that the note evidenced a loan on the policy. It is the opinion of the court that the note was an extension of time for the payment of the premium, and, upon the failure of the Insured to make such payment on or before the due date, January 4, 1932, the policy of insurance lapsed. Hudson v. Knickerbocker Life Ins. Co. of New York, 28 N.J.Eq. 167; Kansas City Life Ins. Co. v. Freeman, 5 Cir., 120 F.2d 106; State Life Ins. Co. v. Spencer, 5 Cir., 62 F.2d 640; Lincoln Nat. Life Ins. Co. v. Hammer, of Ft. Wayne, Ind., 8 Cir., 41 F.2d 12; Wastun v. Lincoln Nat. Life Ins. Co. of Ft. Wayne, Ind., 8 Cir., 12 F.2d 422; Lefler v. New York Life Ins. Co., 8 Cir., 143 F. 814; Robnett v. Cotton States Life Ins. Co., 148 Ark. 199, 230 S.W. 257; Cf. Thompson v. Insurance Company, 104 U.S. 252, 26 L. Ed. 765; Iowa Life Ins. Co. v. Lewis, 187 U.S. 335, 23 S.Ct. 126, 47 L.Ed. 204. A mere reading of the note in its entirety, without resort to a consideration of the facts and circumstances surrounding its execution, amply supports this conclusion. The intent of the parties is clearly expressed therein in the following language: "That if this note is not paid on or before the day it becomes due, *it shall thereupon automatically cease to be a claim against the maker,* and said Company shall retain said cash as part compensation for the rights and privileges hereby granted, *and all rights under said policy shall be the same as if said cash had not been paid* nor this agreement made, except only that the time within which the owner may make a choice of benefits after lapse, as provided in said policy, is hereby extended for three months after the due date of this note, but no longer." (Emphasis by the Court). It is reasonably clear that upon the failure of the Insured to pay the note at maturity, his liability thereon ceased and his rights under the policy terminated. This was undoubtedly the intent of the parties, as clearly expressed in their agreement.

Any doubt as to the nature of the transaction is dispelled upon consideration of the facts and circumstances surrounding it. These facts and circumstances are fully stated in the findings of fact and need not be repeated. There is nothing in either the note or the facts and circumstances surrounding its execution that supports the interpretation urged by the Beneficiaries.

The other arguments advanced by the Beneficiaries seem tenuous and, although fully considered, do not require discussion.

## Conclusions of Law.

I. The payment of the premium in question was a condition precedent to the continuance of the policy and the right of recovery thereon. The policy lapsed upon the failure of the Insured either to make payment of the premium on or before the due date or within the period of grace, or to make payment of the note at or before maturity.

II. The premium note was in fact an extension of time for the payment of premium, and upon the failure of the Insured to pay the note at maturity, the policy lapsed.

III. The defendant was not estopped to deny payment.

IV. Judgment in favor of the defendant and against the plaintiff shall be entered forthwith.